ALONZO CHESBROUGH AND JOHN CARLTON v. THE HOME INSURANCE COMPANY.

61 333
148 ²567

*Insurance—Construction of policy—Agreement of holder to carry an aggregate insurance equal to four-fifths of the value of the property—And in default to become a co-insurer for deficit—Makes him liable as a co-insurer for the difference between the aggregate insurance on the property and four-fifths of its value—Co-insurers—Are persons issuing policies on the same property—Are never jointly liable—But their proportion of liability depends on amount which each insures.*

1. Defendant issued a policy for five thousand dollars on plaintiffs' stock of lumber, conditioned that plaintiffs should carry a total insurance equal to four-fifths of its actual cash value, and on failing so to do should become *co-insurers* to the extent of the *deficit.* Plaintiffs made default, and in a suit to recover for a partial loss defendant was held liable as a co-insurer *with* plaintiffs, up to the amount of its policy, for the amount of such deficit.

   *Held,* that plaintiffs were bound either to procure from others, or to carry themselves, insurance aggregating, with that carried by defendant, four-fifths of the value of the insured property.

   *Held,* further, that the word "*co-insurers*," as used in this clause of the policy, meant *fellow-insurers*, and was designed to place plaintiffs on the same footing with other insurers of the lumber, who contributed ratably in case of loss; that the difference between the actual insurance and four-fifths of the value of the lumber was the amount insured by plaintiffs, and for which they became, in the language of the policy, "co-insurers."

2. All persons issuing policies on the same property are known as co-insurers, and they are never jointly liable, but their proportion of liability depends on the amount which each insures.

Error to Bay. (Greene, J.) Argued April 28, 1886. Decided May 6, 1886.

Assumpsit. Defendant appeals. Judgment below held excessive, and reversed for the excess and affirmed as to balance, with costs to defendant in Supreme Court. The facts are stated in the opinion.

*William H. Wells* and *Ashley Pond*, for appellant.

[Brief confined to a discussion of the *true* construction to be given to the policy. No authorities cited.—REPORTER.]

*Shepard & Lyon* and *Benton Hanchett*, for plaintiffs:

The terms of the provision in question are ambiguous if they will bear the construction contended for by the defendant, for they certainly will bear the construction claimed by the plaintiffs.

The rule of the courts in reference to insurance policies is that where the language used is susceptible of two interpretations, that construction which is most favorable to the assured will be adopted: May on Insurance, p. 182, § 175; *National Bank v. Ins. Co.*, 95 U. S. 678, 679; *Teutonia Fire Ins. Co. v. Mund*, 102 Penn. St. 89; *Loy v. Home Ins. Co.*, 24 Minn. 315, and cases there cited: *Westchester Fire Insurance Co. v. Earle*, 33 Mich. 144.

CAMPBELL, C. J.   In this case the defendant issued a policy to plaintiffs to the amount of $5,000 upon their stock of lumber upon their docks at Au Sable, in Iosco county.

On the sixteenth of May, 1885, there was a loss by fire to the amount of $6,328.   The total value of the lumber on hand was $37,148.23.   Other policies were in existence to the amount of $14,000, which it is admitted were to be considered in dividing up the loss among the insurers.   But it was claimed and admitted that the plaintiffs themselves were bound to carry a further amount of insurance which should also contribute, and the only question presented by the record is how much they should contribute.   It depends upon a written clause in defendant's policy, which ran as follows:

"It is a part of the consideration of this policy, and the basis upon which the rate of premium is fixed, that the assured shall maintain insurance on the property, hereby insured by this policy, to the extent of four-fifths of the actual cash value thereof, and that, failing so to do, the assured shall be a co-insurer to the extent of such deficit, and in that event shall bear his, her, or their proportion of any loss. It is, however, mutually understood and agreed that in case the total insurance shall exceed four-fifths of the actual cash value of the property insured by this policy, the assured shall not recover from this company more than its *pro rata* share of the whole actual cash value of such property."

In the present case four-fifths of the value of the lumber was $29,718.56.   The combined policies, including defend-

ant's, amounted to $19,000, leaving a deficit in the sum agreed to be kept insured of $10,718.56. The defendant insists that it is not concerned whether plaintiffs insured fully in other companies, or carried the insurance themselves. Plaintiffs claim, and the court below held, that defendant, to the extent of $5,000, was bound to bear half of the deficit so as to be a co-insurer with plaintiffs for half the amount not insured elsewhere. This would, in the present case, put the defendant practically on the same footing as if it had insured to the amount of $10,359.28, instead of $5,000.

The only basis for this argument is the use of the word "co-insurer," which it is claimed made defendant and plaintiffs joint or equal insurers to the amount of any deficit which plaintiffs saw fit to leave uninsured.

This construction appears to us unnatural and unreasonable. It nullifies the whole effect of the plaintiffs' agreement to keep up insurance to the amount of four-fifths, and enables them, by violating that agreement, to throw one-half of the burden of their default on the defendant, which can have no means of protecting itself against plaintiffs' misconduct. In the present case, if plaintiffs had neglected to procure any additional insurance at all, defendant, on that theory, would have been compelled to stand insurer to the amount of over $17,000, and consequently been bound to pay nearly three-fifths of the entire loss.

It seems to us the meaning of the clause in the policy is very clear, and holds plaintiffs bound either to procure from others, or to carry themselves, insurance to the extent, with defendant's policy, of four-fifths of the value of the insured property. The undertaking is positive and unequivocal that they shall keep the property insured to that extent, and that they shall themselves be treated as insurers for all that others do not insure. The word "co-insurers" means neither more nor less than fellow-insurers, and is used to put plaintiffs on the same footing with other insurers who issue policies and contribute ratably in case of loss. It cannot mean that defendant is to be made jointly responsible with plaintiffs for any default which plaintiffs see fit to make.

All persons issuing policies on the same property are known as co-insurers, and they are never jointly liable, but their proportion of liability depends on the amount which each insures. The difference between what was actually insured and four-fifths of the value of the property covered was the amount insured by plaintiffs, and for which they became, in the language of the policy, co-insurers. Ang. on Ins. §§ 26, 88. If that word is at all ambiguous, the policy shows plainly what was intended.

The judgment rendered below was excessive, for the reason that it made defendant bear more than its proportion of the loss. The computation acted on below made defendant liable originally, and without interest, for $1,300. The proper sum was $1,064.73, and interest on that to the date of the finding below is $24.23, making the proper sum due then $1,088.96. The judgment below was excessive to the amount of $240.61.

The judgment below must be reversed for the excess over $1,088.96, and affirmed as to the balance. Defendant will recover costs of this Court.

The other Justices concurred.