This action is brought to recover the value of a trunk and its contents destroyed while in the possession of the defendant, to which it had been delivered by the plaintiff's assignors for transportation from Rochester to New York on the evening of October 23d 1897.
Curtis Wheeler were manufacturers of shoes in the city of Rochester, and Joseph E. Taylor acted as their traveling salesman on the 23d day of October, 1897, and had been in their employ in that capacity for a period of nine years. On the evening in question, Taylor, acting for his employers, went from Rochester to New York on business; before starting he arranged with the baggageman of the defendant for the transportation of a trunk and an article called a "telescope;" the trunk and its contents, consisting of samples of shoes, belonged to Curtis Wheeler, except a few articles of wearing apparel, the property of Taylor, for which no claim is made. The telescope contained the wearing apparel of Taylor.
For the trunk Taylor received from the baggageman a card known as "Excess Baggage Check," for which he paid eighty-five cents excess of baggage; for the telescope he received the ordinary metallic check. Taylor described the trunk, when a witness at the trial, as a regular sample trunk, made of wood and covered with canvas; about 32 or 34 inches in height, 36 to 38 inches in length and 22 to 24 inches in width.
The "number taker" of the Rochester baggageroom was sworn, and stated that he took a record of the baggage in and out; he produced a sheet containing a record covering October 23d 1897, which showed the description of plaintiff's baggage as a sample trunk; he further testified that he so designated it from its appearance. *Page 87 
Taylor testified that he had been in the habit of leaving Rochester with his samples on an average of four, six or eight times a year for about twelve years. The night checkman was sworn for defendant and stated that he did know what the contents of the trunk were, and that nothing was said to him as to the contents. He was asked on cross-examination if he remembered anything about this particular trunk or its appearance; he answered, "I couldn't just now, no."
It is to be observed that this witness was not asked by defendant's counsel whether he recognized this piece of baggage as a sample trunk from its external appearance; he does not contradict the number taker as to the external appearance of the baggage showing it was a sample trunk.
The defendant does not question receiving the trunk, or the failure to deliver it, but insists it is not liable for its loss with contents, for the reason that Taylor when paying for excess of baggage on the trunk failed to inform the checkman that it contained samples.
The learned counsel for the defendant very frankly states in his brief that it is true the trunk was what is commonly known as a sample trunk and had the appearance of one, but, nevertheless, argues that the plaintiff should have been nonsuited.
The liability of common carriers for the loss of sample trunks carried by commercial travelers in the transaction of their business has been frequently considered by the courts of this and other jurisdictions during the last twenty-five years, and, while the decisions are conflicting, many of them are distinguishable in their facts from the case at bar.
The law relating to this subject has been in a state of evolution, and certain rules have finally been laid down in this state calculated to protect the rights of both parties, in view of the fact that a vast amount of the wholesale business of the country is transacted through commercial travelers to the great profit of the railroad companies and convenience of merchants.
As this case is in the position where each party is to be regarded as having requested the direction of a verdict (a *Page 88 
point we will discuss later), and the trial judge having directed a verdict for the plaintiff, all the controverted facts and all inferences in support of the judgment will be deemed conclusively established in his favor.
The defendant read in evidence certain rules of the company which provide in brief that baggage consists only of necessary wearing apparel limited to 150 pounds in weight; that sample baggage of not more than 150 pounds will be checked free for one person, regardless of the number or kind of tickets presented.
Rule 4 reads as follows: "Small cases or trunks containing merchandise will be carried as an accommodation to commercial travelers and may be checked when release of liability, Form 220, is signed in consideration of its transportation on passenger trains as baggage. In case personal baggage and samples are contained in same trunk, a release must be signed for samples, and agents will refuse to check the same unless this is done."
The release referred to absolves the company from all liability for loss, detention or damage to the trunk or its contents.
It is urged on behalf of the defendant that rule 4 limited the authority of the baggageman, and that he was unauthorized to check a sample trunk without exacting the release. This court has held that the baggage agent stands in the place of the railroad company (Talcott v. Wabash R.R. Co., 159 N.Y. 471), and the record in the case before us shows that no release was exacted, nor was plaintiff's agent aware of the rule.
The plaintiff's agent testified that he had on a number of occasions signed this release when he desired to stop at several stations between Rochester and New York, as he could settle for excess of baggage through to New York for less than to pay this excess from each station at which he stopped.
On cross-examination he was asked: "Q. I ask you if you did not know the fact that when the baggagemaster knew that your trunk contained samples, or any other traveling man's *Page 89 
trunk contained samples, that this release of liability was executed? A. No, sir; I had no knowledge of that. I knew that I had from time to time executed those releases on my sample baggage."
On re-direct examination he was asked: "Q. When you say that you had executed those releases, you refer to the releases which you described before, in order to save paying excess of baggage from each place when you departed? A. Yes, sir. No release was presented to me, nor did I sign any release, nor was I asked to, when I checked this trunk in controversy."
The defendant's checkman, or baggage master, does not deny this statement.
This case presents the question whether the baggageman of the defendant, who checked the lost trunk and collected excess of baggage thereon, knew that it was a commercial traveler's trunk from surrounding facts and circumstances, and that defendant was thus chargeable with notice.
This court has held that notice may be given to the common carrier by other means than the direct statement of the owner that he is a commercial traveler, and that his trunk contains samples.
In Sloman v. Great Western Ry. Co. (67 N.Y. 208) plaintiff's son, a lad of eighteen years of age, was employed by him as traveling agent to sell goods by sample. He had two large trunks containing the samples, different from ordinary traveling trunks, and had a valise for his personal baggage. He delivered the trunks to a baggage master at a railroad depot and when asked to which station he wished them checked, replied that he did not then know, as he had sent a dispatch to a customer at a certain place to know if he wanted any goods; if not, he desired them to go to a certain other place, where he expected to meet customers. Soon after he checked his baggage and paid two dollars for extra weight.
Judge RAPALLO, in his opinion, said: "It does not appear that it was stated, in terms, to the baggage master what the trunks contained, but the jury had the right to consider the *Page 90 
surrounding circumstances, the appearance of the passenger and of the articles, the conversation between the passenger and the baggage master, and the dealing between them, and if they indicated that the trunks were not ordinary baggage, or received or treated as such, the jury had the right to draw the inference of notice, and that they were received as freight."
In Talcott v. Wabash R.R. Co. (159 N.Y. 461) it appeared that when weighing the trunks the agent of the company observed "they weighed light," and the traveler replied, "Yes, they contain samples of underwear."
Judge VANN, referring to this incident, in the opinion of the court, at page 471, said: "The number and appearance of the trunks was some evidence that they contained merchandise, and the agent was expressly told that they contained samples. In view of the custom proved, that commercial travelers generally carry samples belonging to their employers in their trunks, this warranted the inference that the baggage agent knew the exact facts."
It the case at bar there were facts warranting the submission of the question to the jury, or the trial judge, as to whether defendant was charged with knowledge of the character of the trunk through its agent; the external appearance of a regular sample trunk; the readiness with which it was recognized, as such, by the official "number taker;" the fact that defendant was constantly checking sample trunks on all of its passenger trains except the Empire State Express; the further fact that for about twelve years plaintiff's agent had been traveling on defendant's road with a sample trunk and leaving Rochester six or eight times a year; the fact that sample trunks were checked for the same compensation as ordinary baggage — these and any other relevant facts were properly considered when the verdict was directed, and the facts warranted by the evidence stand conclusively established in favor of the plaintiff.
While it is doubtless the better practice, as suggested by defendant's counsel, that a traveler in charge of a sample trunk should state to the baggage agent the fact when he *Page 91 
seeks to check it, yet if in the haste of transacting such business, or where by many repetitions of the act, much is taken for granted, this is not done, it would be a harsh and unreasonable rule that precluded the plaintiff from submitting to the jury the facts surrounding the transaction.
The recovery in this case was not on the contract of passage entered into when the plaintiff's agent purchased his ticket, but on an independent agreement for the transportation of the sample trunk as freight.
In Sloman v. Great Western Ry. Co. (67 N.Y. at page 214), Judge RAPALLO said: "From all the circumstances, the jury were, we think, authorized to draw the inference that the baggage master understood that the agent was traveling for the purpose of selling goods, and that these trunks contained his wares; that he was not entitled to have them carried as his ordinary baggage and therefore the extra charge was made, and they were carried as freight." In Talcott v. Wabash R.R. Co. (159 N.Y. at page 470) this case was cited and followed.
The Sloman case also authorizes a recovery by a plaintiff where this independent contract is made by his salesman as agent. (p. 212.)
There remains to be considered one other question. The learned Appellate Division in its opinion stated, in substance, that as neither counsel raised the point that there were any questions of fact to be submitted to the jury, the effect was to establish the facts, if any there were, in favor of the plaintiff.
As the correctness of the practice at the trial is challenged, we will consider the question.
At the conclusion of the evidence the defendant's counsel moved for a nonsuit upon various grounds stated by him, which motion was denied. He then asked the court: "What question will your honor submit to the jury?" To this the court inquired: "What question do you desire to submit to the jury?" To which the defendant's counsel answered: "I do not desire to have any question submitted to the jury." *Page 92 
Thereupon the plaintiff's counsel stated that he was willing to leave it to the court, to which the defendant's counsel answered: "I stand on my motion for a nonsuit, of course." The plaintiff's counsel then asked for a direction of a verdict, which was objected to by the defendant's counsel, but was granted by the court. A verdict was directed and an exception taken by the defendant. Neither party asked to have any question of fact submitted to the jury.
In the case of Adams v. Roscoe Lumber Co. (159 N.Y. 176), O'BRIEN, J., in delivering the opinion of the court, says: "The court directed a verdict in favor of the plaintiffs for the value of the lumber, with damages for its detention, and the defendant excepted. The request by both parties for the direction of a verdict amounted to a submission of the whole case to the trial judge, and his decision upon the facts has the same effect as if the jury had found a verdict in the plaintiffs' favor after submitting the case to them. Under these circumstances the judgment is conclusive with respect to the two facts upon which the right of action depended." To the same effect is the case ofSmith v. Weston (159 N.Y. 194); Thompson v. Simpson
(128 N.Y. 270, 283), and Koehler v. Adler (78 N.Y. 287).
It is contended, however, that as the defendant asked for a nonsuit instead of a directed verdict, the foregoing cases have no application. It must be borne in mind that in this case, after the denial of his motion for a nonsuit, the defendant's counsel asked the court what question his honor would submit to the jury, and that the court then inquired of him what question he wanted submitted, and he answered that he did not desire any question submitted to the jury.
In the case of Barnes v. Perine (12 N.Y. 18), after the evidence had closed, the counsel for the defendant moved for a nonsuit. The motion was denied and the defendant excepted. The court thereupon, at the request of the plaintiff, directed a verdict in his favor. ALLEN, J., in delivering the opinion of the court, said: "If the defendant supposed that there was a disputed question of fact, material to the issue between the *Page 93 
parties, he should have made a distinct request that it should be submitted to the jury. But having treated the questions as purely legal, and acquiesced in the disposal of them by the court as such, he cannot now be heard to object that facts were involved which should have been decided by the jury."
In Winchell v. Hicks (18 N.Y. 558) the motion was also for a nonsult at the conclusion of the evidence, which was denied and a verdict directed in favor of the plaintiff. In that case it was held that the defendant, moving at the conclusion of the evidence for a nonsuit, which is denied, if he desires that questions of fact be submitted to the jury, must distinctly request it and cannot upon appeal make the point under a general exception to the judge's direction of a verdict.
In the case of O'Neill v. James (43 N.Y. 84) there was a motion for a nonsuit, which was denied and the jury directed to find a verdict in favor of the plaintiff for the amount of the damages sustained. It was held that where a party, upon the trial, rests his case upon certain positions which he calls upon the court to rule in his favor as questions of law arising upon undisputed facts, if he also desires that any question of fact in the case be submitted to the jury, he must make a motion to that effect. In the absence of this his mere exception to the ruling of the judge that there is no question for the jury is unavailing. (See, also, Ormes v. Dauchy, 82 N.Y. 443;Dillon v. Cockcroft, 90 N.Y. 649.)
In the case of Stone v. Flower (47 N.Y. 566) the trial court directed the jury to find a verdict for the defendant. The plaintiff, however, had not waived his right to have the questions of fact involved in the case submitted to the jury by any motion on his part for such a direction; and it was held that he was entitled to have his exception, taken to the direction of a verdict, reviewed, but GROVER, J., in delivering the opinion of the court, refers with approval to Barnes v. Perine, Winchell
v. Hicks and O'Neill v. James, above cited, and distinguishes the case under consideration by him from the rule adopted in those cases. In Clemence v. City *Page 94 of Auburn (66 N.Y. 334), and in Pratt v. D.H.M.F. Ins. Co. (130 N.Y. 212), relied upon as supporting a different rule, there was no waiver by the appellant by motion to direct a verdict or for a nonsuit.
The cases cited of Dwight v. Germania Life Ins. Co. (103 N.Y. 341); Bagley v. Bowe (105 N.Y. 171); Bulger v. Rosa
(119 N.Y. 459), have no application to the case at bar, as here the proceedings at the close of the trial were, in legal effect, a request by both counsel for a directed verdict.
The judgment and order appealed from should be affirmed, with costs.