(71 App. Div. 54.)

CODY et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1. MUNICIPAL CORPORATIONS—CONTRACT—MACADAMIZING DRIVEWAY—DISCON-
   TINUANCE—NOTICE.
       Under a contract for macadamizing a driveway, stipulating that, if the
   work on any particular 1,000 feet is not performed to the park commis-
   sioner's satisfaction, the agreement shall be considered as violated, and
   the commissioner may order the discontinuance of the work, on notice,
   a notice by the commissioner to discontinue work before the completion
   of 1,000 feet is premature, as it is only when a particular 1,000 feet was
   not completed to his satisfaction that he could terminate the contract.

2. SAME—DELAY IN PERFORMANCE—PENALTY.
       Where a contract for macadamizing a driveway requires the entire
   work to be performed in a stipulated time, and each 1,000 feet within
   a proportionate part of the time, under a penalty of $50 a day for each
   day in excess of the agreed time, failure to perform the first 1,000 feet
   of the work within the proportion of the time allotted to it does not
   justify the abrogation of the entire contract.

3. SAME—RESCISSION.
       Where a contract for macadamizing a driveway authorizes the city, on
   failure to complete any section of the work to the park commissioner's
   satisfaction, to discontinue the work, on notice, and employ other con-
   tractors to complete the work at the contractor's expense, out of the
   balance remaining to his credit, the city, on failure to complete a section
   of the work to the park commissioner's satisfaction, cannot abrogate
   the contract without employing other contractors to complete it.

4. SAME—JUSTIFICATION OF DELAY—QUESTIONS FOR JURY—DETERMINATION.
       Where a city has the right to terminate a contract for the macadamiz-
   ing of a driveway in case the work is delayed, but, upon the evidence in
   an action by the contractor, questions of fact are presented,—as to
   whether the contractor's delay was excused by the condition of the road-
   way and the working of other contractors, and the city's failure to
   furnish lines and grades,—the trial court's refusal to dismiss the com-

plaint is a determination of this issue of fact in favor of the contractor, and, in the absence of a request to submit the questions to the jury, is conclusive on the city.

Appeal from trial term, New York county.

Action by Richard Cody and others against the city of New York. From a judgment for plaintiffs, and an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Chase Mellen, for appellant.

L. Laflin Kellogg, for respondents.

INGRAHAM, J. On the 19th day of May, 1897, a contract was made between the plaintiffs and the city of Brooklyn whereby the plaintiffs were to grade, regulate, and macadamize the main driveway of the Ocean Parkway, between Prospect Park and Twenty-Second avenue, as shown upon a map attached to the contract; the plaintiffs to receive as compensation for doing the work a specific price per square yard. The complaint alleges that the plaintiffs proceeded to duly perform the same, and have ever since been willing and able to carry out and perform the same, but, while the plaintiffs were proceeding in good faith under the contract, they were hindered, delayed, and prevented by the city of Brooklyn from completing the contract, and that on or about the 25th day of August, 1897, the city of Brooklyn, its officers and agents, entirely stopped and completely prevented the performance and completion of the said contract, and would not permit the plaintiffs, although ready and willing so to do, to do any further work thereunder, and thereafter proceeded to cause said contract to be carried out and completed by other parties; that the amount and value of the work actually performed at the time of the said prevention was $4,275.25; and that the profits which the plaintiffs would have made in the performance of the said contract, but for the breach thereof on the part of the city of Brooklyn, was $31,666.74, for which two sums the plaintiffs demand judgment. The answer admitted the execution of the contract, denied the allegations as to the breach by the city of Brooklyn, and alleged that the plaintiffs had failed to comply with the contract and proceed with the work as required thereby; that the commissioner of the department of parks ordered the discontinuance of the said work by the plaintiffs because the work was not performed according to his satisfaction; and that said contract, by its terms, and by the covenants, stipulations, and agreements of the plaintiffs, thereby became violated and broken, and all liability thereunder on the part of the defendant or its predecessor in liability ceased.

By the specifications referred to in the contract, and made a part thereof, it was provided that the plaintiffs should begin their work at the Bay Parkway, and work in the direction of Prospect Park; that—

"They shall not disturb more than 1,000 lineal feet of the roadway at any one time, and shall complete the 1,000 feet to the satisfaction of the com-

missioner of the department of parks before beginning an additional 1,000 feet, and it is agreed that, if the work upon any particular 1,000 feet is not performed to the satisfaction of the commissioner of parks, then the terms of this agreement shall be considered to have been violated, and the contract broken, and the said commissioner of the department of parks is hereby authorized to order, in writing, the discontinuance of the work by the parties of the second part, upon three days' notice, and to employ such other contractor as he may elect to complete the work at the expense of the parties of the second part, out of the balance remaining to the credit of this contract."

It was further provided that:

"The work must be completed within four months of the date of written notice given by the commissioner to begin work, and each 1,000 feet must be completed within one-tenth of the total number of working days in the four months, under a penalty of fifty (50) dollars per day for every day in excess of the time stipulated."

The contract seems to have been executed on the 19th day of May, 1897, and on the 7th day of August, 1897, the plaintiffs received a notice to commence work under the contract on the 9th day of August. It appeared that on the 9th day of August, when they commenced work, certain other contractors were putting down a patent gutter or curb on the first 1,000 feet of the avenue, and that other contractors were putting in conduits for electric lights; that the plaintiffs went to work upon this portion of the avenue on the 9th of August, and remained at work until the 25th of August; that during that time no lines and grades were furnished to the plaintiffs by the park department, or the engineer in charge, notwithstanding a provision in the contract that lines and grades should be furnished by the park department, or its engineer in charge, and although the plaintiffs had demanded of the commissioner of parks that such lines and grades should be furnished, the answer of the commissioner being that the engineer was away; that on the 25th day of August, 1897, the commissioner of parks of the city of Brooklyn served upon the plaintiffs a notice that, as they had not carried out the terms of their contract for the improvement of the Ocean Parkway, they were notified, under the provisions of paragraph 8 of the contract, to discontinue all work under it, as it had been broken and violated, by its terms; that thereafter the plaintiffs were not allowed to do any further work under their contract. The contract is not divided into clauses that are numbered, and it does not appear under what particular clause of the contract this notice was given. It was stated, however, by counsel upon the argument, that the notice was given under the provisions of that clause of the specifications which provides that:

"If the work upon any particular 1,000 feet is not performed to the satisfaction of the commissioner of parks, then the terms of this agreement shall be considered to have been violated, and the contract broken; and the said commissioner of the department of parks is hereby authorized to order, in writing, the discontinuance of the work by the parties of the second part, upon three days' notice."

But it would seem that this clause of the contract did not justify the notice given by the commissioner of parks. That referred solely to a failure to complete any 1,000 feet of the roadway to the satis-

faction of the commissioner of parks, but the 1,000 feet had not been completed at the time the notice was given. On the contrary, at that time the plaintiffs were at work upon the first 1,000 feet. The right to give the notice as prescribed in this clause of the specifications depended upon a failure of the contractors to complete any particular 1,000 feet of the work to the satisfaction of the commissioner of parks, and it was only in case a particular 1,000 feet of the work was not completed to his satisfaction that he had a right, under this clause of the specifications, to terminate the contract. The provision as to the time for the completion of the work contained in a subsequent clause of the specifications had no relation to a termination of the contract. A penalty was therein prescribed for a failure to complete any particular 1,000 feet of the roadway, but this was not a forfeiture of the contract, but a penalty of $50 per day for every day in excess of the time stipulated. By this clause of the contract the plaintiffs agreed to complete each 1,000 feet of the parkway within one-tenth of the total number of working days in the four months from the date of written notice given by the commissioner to begin work. Under this provision the plaintiffs would be required to complete the first 1,000 feet within about 10 or 12 working days. It did appear that the plaintiffs had already consumed 14 working days upon the first 1,000 feet, and that 1,000 feet had not been finished. One of the plaintiffs, however, described in his testimony the condition of the parkway at the time he was required to commence work, and testified that the plaintiffs were delayed by the fact that other employés or contractors of the city were at work upon this 1,000 feet; that they had graded 800 feet of the roadway, and had macadamized 385 feet of it, when they were stopped.

It is undoubtedly true that the plaintiffs had not completed the first 1,000 feet within one-tenth of the total number of working days in the four months in which the whole contract was to be completed, but there is nothing in this contract which expressly authorizes the city of Brooklyn to terminate the contract upon the failure of the plaintiffs to complete any one 1,000 feet within the time specified. The penalty that was provided for a failure to complete their work within the four months was a penalty of $50 per day. The fact that the city imposed such a penalty upon the contractors was inconsistent with the right of the city to terminate the contract in case the work did not proceed with the rapidity required. It was in the nature of a penalty for bad work, rather than delayed work, which authorized the commissioner to terminate the contract. There is no allegation in the complaint, nor was there any proof upon the trial, that the work that was actually being done by the plaintiffs was not in accordance with the terms of the contract. The plaintiffs had taken more time in doing this first 1,000 feet than that allowed by the contract, and unless excused by the existing conditions, for which the plaintiffs were not responsible, but for which the defendant was, they would be subject to the penalty provided for by the contract in case the work was delayed; but there was certainly nothing to justify the defendant in abrogating its con-

tract, and by force preventing the plaintiffs from doing further work under it.

Nor do we think that the notice served upon the plaintiffs was in accordance with the provisions of the contract. The clause of the contract in question did not contemplate an entire abrogation of the contract. It authorized the defendant, in case the plaintiffs had failed to complete any one section of the work, to employ others to do that work on account of the plaintiffs, in which case the plaintiffs would have still been entitled to the contract price, less the amount expended by the city in the completion of the work. The commissioner of parks did not adopt this method provided by the contract. He simply abrogated the contract, and prevented the plaintiffs from performing any further work under it. The commissioner testified that, after the letter of August 25, 1897, was sent to the plaintiffs, there was no work done on this Ocean Parkway. Whether or not the plaintiffs had completed the contract according to its terms, and whether the delay in doing this first 1,000 feet was caused by the failure of the city, or other contractors employed by the city, to put the street in a proper condition for the plaintiffs to do the work, and the failure to furnish the lines and grades, was at least a question of fact for the jury. I think, therefore, that the refusal of the trial court to dismiss the complaint or direct a verdict for the defendant was proper.

At the end of all the testimony, counsel for the defendant again moved to dismiss the complaint, upon the ground that the plaintiffs had not established a cause of action under their pleadings. That motion was denied, and the defendant excepted. The plaintiffs' counsel then moved for the direction of a verdict for the plaintiffs, and to leave only the question of damages to be assessed by the jury. That motion was granted, and the defendant excepted. The court then submitted the question of the plaintiffs' damages to the jury. Counsel for the defendant made no request to submit any question of fact to the jury, other than that submitted, and the jury found a verdict for the plaintiffs for $12,466.33. Both parties having requested the court to decide the question as to the defendant's liability for the refusal of the city of Brooklyn to permit the plaintiffs to continue the contract, they must be deemed to have submitted that question to the court for decision; and, the defendant having failed to request to submit any question of fact to the jury, its exception to the direction of a verdict for the plaintiffs for the damages sustained by the plaintiffs in consequence of the refusal of the city of Brooklyn to allow them to continue their contract raises only the question as to whether there was evidence to sustain the decision of the court that the defendant was liable. Trimble v. Railroad Co., 162 N. Y. 84, 56 N. E. 532, 48 L. R. A. 115, and cases cited; Barnes v. Perine, 12 N. Y. 18; Smith v. Coe, 170 N. Y. 168, 63 N. E. 57. I think, however, that upon this undisputed evidence the city of Brooklyn was not justified in abrogating the contract entirely, and refusing to allow the plaintiffs to continue its performance. As before stated, the clause under which the commissioner of parks attempted to abrogate the contract, and to refuse to allow

the plaintiffs to proceed, contemplated, not an entire abrogation of the contract, but the completion of the work by the city, charging the plaintiffs with the cost of such completion. This was not done. The plaintiffs were merely prevented from continuing the work, and their contract never was completed by the city of Brooklyn. No provision of the contract terminated it upon the failure of the plaintiffs to perform the work within the time specified. If the plaintiffs had proceeded with the contract so that all but the last section had been completed, but had been delayed in the completion of the last section for a few days over the time provided for the completion of the contract, it could hardly be claimed that the city of Brooklyn would have been justified in rescinding the contract, and refusing to pay the plaintiffs for any of the work under it; and yet, if the city could take this position as to the first 1,000 feet, it could have taken the same position as to the last. What was clearly contemplated was a provision as to the time within which the work should be completed, and a penalty to be imposed by a deduction of a fixed sum for each day that the plaintiffs had delayed in the completion of their work. The fact that the city was to deduct from the amount due to the plaintiffs the sum of $50 per day for each day's delay in the completion of the contract contemplated that, notwithstanding the delay, the plaintiffs were to complete the contract, although delayed beyond the time specified; for in no other way would there be any liability of the city of Brooklyn to the plaintiffs. But even assuming that the commissioner of parks would have the right to terminate the contract in case it was delayed, upon the evidence a question of fact was presented,—as to whether or not that delay was excused by reason of the condition of the roadway, and the working of the other contractors, which prevented the plaintiffs from continuing the work, and the failure to furnish the lines and grades; and this question of fact was determined by the trial court in refusing to dismiss the complaint, and, in the absence of any request to submit the question to the jury, it is conclusive upon the defendant.

Our attention is called to several rulings upon questions of evidence to which the defendant excepted, but an examination of these questions does not disclose any error that would justify a reversal of the judgment. The amount of the verdict, in case the city of Brooklyn was liable, was much less than the evidence would have justified, and, upon the whole case, I do not think we should order a new trial.

The judgment and order appealed from should be affirmed, with costs. All concur; VAN BRUNT, P. J., in result.