THEODORE DURHAM, Respondent, *v.* THE STUYVESANT INSURANCE COMPANY OF THE CITY OF NEW YORK, Appellant.

(Supreme Court, Appellate Term, First Department, April Term— Filed June, 1920.)

**Insurance** (fire) — standard form — co-insurance clause — warehousemen — Insurance Law, § 121, added by Laws of 1917, chap. 440, § 3. ·

Plaintiff contracted to pay for merchandise by sight draft against bill of lading. Upon delivery to warehouse defendant accepted in payment a thirty day draft. *Held,* that title passed to plaintiff upon delivery to warehouse.

The standard form of fire insurance provided in the Insurance Law, section 121, as added by section 3, chapter 440 of the Laws of 1917, makes no provision for a co-insurance clause, and such a clause is inconsistent with its conditions.

APPEAL by defendant from a directed judgment of the City Court of the city of New York, in favor of the plaintiff.

Prentice & Townsend (Robert Kelley Prentice, of counsel), for appellant.

Ellison, Ellison & Fraser (William B. Ellison and Bruce Ellison, of counsel), for respondent.

FINCH, J.  The action was brought upon a policy of fire insurance to recover damages for certain flour claimed to have been covered by said policy.  The policy is known as a floating policy covering merchandise owned by the insured wherever (with certain exceptions) the same may be located.  The appellant here seeks to review certain questions of fact, but at the close of the plaintiff's case defendant moved for a directed verdict, and it was then expressly agreed, and in fact insisted upon by defendant, that there were no questions of fact or evidence in support thereof to be passed on, whereupon the plaintiff also moved for a direction of a verdict.  As both asked for a directed verdict, all questions of law and fact were, therefore, to be decided by the court and these were resolved in favor of the plaintiff.  *Trimble* v. *New York C. & H. R. R. R. Co.,* 162 N. Y. 84; *Mullen* v. *Quinlan & Co.,* 195 id. 109, 113.  Only two questions are, therefore, presented for review, *first,* whether the plaintiff owned the property in question at the time it was destroyed, and, *second,* whether the co-insurance clause of the policy was applicable, in which latter event the defendant's liability would be reduced.

It appears that plaintiff purchased flour from Youngblood, Inc.  Youngblood, Inc., procured the flour to be shipped to plaintiff, the terms of sale being that plaintiff was to pay for the flour on its arrival by a sight draft against the bill of lading.  When the flour arrived plaintiff was unable to pay for the same, but wrote Youngblood requesting that the flour be placed in a certain warehouse for his account, and at his

expense and payment would be made in a few days. In conformity with this request Youngblood delivered the bill of lading to the warehouseman who obtained the flour, and a few days thereafter plaintiff delivered to Youngblood his trade acceptance, dated May 23, 1919, payable thirty days thereafter. While under the original .contract plaintiff was not entitled to possession of the flour until the payment of the sight draft, it is clear that said contract was mutually modified so that the seller, Youngblood, accepted payment by a thirty-day draft and title thereupon vested in the plaintiff, although claim might be urged that it had vested earlier. Even though this might raise a question of fact, which I believe it does, yet the trial court has resolved this question in favor of the plaintiff, and there is evidence to sustain his finding.

The co-insurance clause contained in the policy was disregarded apparently upon the ground that it was illegal and, therefore, void, upon which theory this court is asked to sustain the judgment in that particular.

In 1917 the legislature, by amendment to section 121 of the Insurance Law, provided for a new standard form of fire insurance policy and said amendment also provided that " no other or different provision, agreement, condition or clause shall be in any manner made a part of such contract or policy or indorsed thereon or added thereto or delivered therewith, except as follows, to wit:   *   *   *   3. The extent of the contribution to be made under the policy in case of loss or damage; 4. Any other matter necessary clearly to express all the facts and conditions of insurance on any particular risk. Provided, however, that no such agreement or rider shall be inconsistent with or a waiver of any of the conditions or provisions of the standard fire insurance policy hereby established.''

There was in the standard form no provision made for a co-insurance clause, but the defendant contends that the same is authorized under subdivisions 3 and 4 above quoted. The respondent, on the other hand, urges that said clause is inconsistent with the conditions of the standard policy. It is clear that the latter contention is correct, since the policy without said clause provides for payment of a loss in the ratio that the face amount of all insurance bears to the amount of the loss irrespective of the value of the property; on the other hand, when a co-insurance clause is read into the policy the company's liability is determined by the ratio which the face amount of the total insurance carried bears to the value of the property. In other words, generally stated, in the absence of a co-insurance clause, the insured collects his whole loss if that does not exceed his insurance and his whole insurance if that does not exceed his loss. With a co-insurance clause present, the foregoing rule of recovery is modified, and the recovery reduced if the insurance and the loss or both are below the percentage of value. Richards Ins. (3d ed.) § 242. In consequence the langage used in subdivisions 3 and 4 cannot be held to allow the inclusion of a co-insurance provision because inconsistent with the provisions of the standard policy. In addition, the word "contribution" as used in subdivision 3, above quoted, would seem to be only applicable to an apportionment of loss among companies issuing concurrent policies. Richards Ins. (3d ed.) §§ 315, 316, pp. 431-433; *Farmers' Feed Co. v. Scottish Union & Natl. Ins. Co.,* 173 N. Y. 241.

Richards in his work on insurance calls attention to the fact that certain states have passed statutes prohibiting the inclusion of a co-insurance clause in a policy except as the insured may voluntarily accede to it in consideration of a lower premium and the

same author points out that effect should not be given to these clauses when they are inconsistent with statutory provisions. Richards Ins. (3d ed.) § 342. Moreover, it does not appear that any approval has been given by the superintendent of insurance to the addition of the co-insurance clause in connection with the standard form of policy adopted by the amendment of 1917 even assuming that such approval would be effective. While the superintendent apparently did give his approval in connection with the old form, such form was discarded by the legislature of 1917 when the new form was adopted. The cases cited by the appellant are merely an interpretation of the co-insurance clause and were decided before the amendment of section 121 in 1917. In consequence, the denial of the defendant's motion to amend its answer or to withdraw a juror for the purpose of moving at Special Term for leave to amend, cannot prejudice the defendant because the avowed purpose of the amendment was to show in defense that the actual value of the property insured was greater than stated by the plaintiff.

It follows that the judgment should be affirmed, with costs.

GUY and WAGNER, JJ., concur.

Judgment affirmed, with costs.