SPENCER ALDRICH, Plaintiff, v. GREAT AMERICAN INSURANCE COMPANY, NEW YORK, Defendant.

First Department, January 14, 1921.

**Insurance — validity of coinsurance clause in fire insurance policy — Insurance Law, section 121, as added by chapter 440 of the Laws of 1917, construed.**

The parties to a fire insurance contract are not prohibited by chapter 440 of the Laws of 1917, adding section 121 to the Insurance Law, and the standard fire insurance policy thereby adopted, from agreeing, in consideration of a reduced rate of insurance to the assured, that an eighty per cent average or coinsurance clause shall be attached to the standard form of policy.

PAGE, J., dissents.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Sidney H. Stuart,* for the plaintiff.

*George Richards* of counsel [*Richards & Affeld,* attorneys], for the defendant.

LAUGHLIN, J.:

The point presented for decision by this submission is, whether the parties to a fire insurance contract are prohibited by chapter 440 of the Laws of 1917, adding section 121 to the Insurance Law, and the standard fire insurance policy thereby adopted, from agreeing, in consideration of a reduced rate of insurance to the assured, that an eighty per cent average or coinsurance clause shall be attached to the standard form of policy, by which, in the event that the assured does not carry insurance to the extent of eighty per cent or more of the value of the property insured, the insurer shall not be liable for a greater proportion of any loss or damage to the property than the sum insured bears to eighty per cent of the actual cash value of the property at the time of the loss. The standard form of policy in use when the insurance policy to which this insurance relates was issued contains in lines 101

to 105, inclusive, a clause with respect to "*pro rata* liability" in cases of other insurance, by which it is provided that the insurer "shall not be liable for a greater proportion of any loss or damage than the amount hereby insured shall bear to the whole insurance covering the property, whether valid or not and whether collectible or not." Like provisions with others were contained in lines 96 to 98, inclusive, of the standard form of policy in use at the time of the enactment of the last-mentioned statute. (Richards Ins. Law [3d ed.], 722; 1 Clement Fire Ins. 479.) At the time of the enactment of said statute a form for an average clause in blank with respect to the percentage, and providing also that no special inventory or appraisement of the undamaged property shall be required where the loss claimed does not exceed five per cent of the maximum amount named in the policies written thereon and in force at the time of the loss, and that if the insurance be divided into two or more items these clauses shall apply to each clause separately, had been filed with and approved by the Superintendent of Insurance but was not included in the standard form, and it was lawful for the insurer and the assured to contract with respect thereto and to attach the average or coinsurance clause to the policy as a rider. (Richards Ins. Law, 733; Laws of 1913, chap. 181, amdg. Ins. Law, § 121.) The stipulated facts show that a standard form of fire insurance policy was issued to the plaintiff by the defendant after the enactment of said amendment in 1917 and that the parties agreed in writing to an average clause with exemption of special inventory or appraisement in certain cases, there designated as an "Eighty Per Cent Average Clause," in the identical form of the clause theretofore authorized and in use, and attached the same to the policy as a rider. The defendant has paid the amount due to the plaintiff on account of the loss if this clause is valid. If it be invalid, there is a balance still due and owing, for which the stipulation authorizes a judgment in favor of the plaintiff, but if the clause be valid the defendant is to have judgment, and in either event the judgment is to be without costs. In the absence of such an average or coinsurance clause, the assured is entitled to collect his entire loss not exceeding the amount of the insurance; but under this average clause, if both the amount of the

loss and the amount of the insurance are less than the percentage of the value of all the property insured, there cannot be a full recovery for the loss. (*Farmers' Feed Co.* v. *Scottish Union Ins. Co.*, 173 N. Y. 241.) In other words, if the insurance represents eighty per cent or more of the value at the time of the loss of all the property insured, full recovery of the loss may be had; but if the insurance is for less than eighty per cent of such value, then the recovery is limited to the proportion of the loss which the amount of the insurance bears to eighty per cent of the value at the time of the loss of all the property insured. (*Farmers' Feed Co.* v. *Scottish Union Ins. Co., supra.*) As, for example, if the value of the property insured be $10,000 and the insurance be $8,000 or more, the entire loss, whether of all or part of the property insured to the extent of the amount of the insurance is recoverable; but if the amount of the insurance in such case was only $5,000, the assured could recover only five-eighths of the loss, whether of all or of part, not exceeding the amount of the insurance.

Chapter 488 of the Laws of 1886 provided, among other things, for the preparation and filing in the office of the Secretary of State by the New York board of fire underwriters on or before October fifteenth, or in default thereof, by the Superintendent of Insurance on or before November fifteenth of that year, a form of fire insurance policy " together with such provisions, agreements or conditions as may be indorsed thereon or added thereto and form a part of such contract or policy," and that such form of policy should become the " Standard Fire Insurance Policy of the State of New York." Counsel for the defendant states in the points that coinsurance clauses, in effect the same as the one presented by the submission, were so filed pursuant to that statute. That fact is not stipulated, but counsel quotes the clauses and they sustain his claim and if necessary, doubtless, we could take judicial notice of the fact since they become part of the standard policy.

By section 121 of the Insurance Law of 1892 (Gen. Laws, chap. 38; Laws of 1892, chap. 690) it was provided that the printed blank form of a contract or policy of fire insurance " with such provisions, agreements or conditions as may be

indorsed thereon or added thereto and form a part of such contract or policy " theretofore filed in the office of the Secretary of State pursuant to the provisions of chapter 488 of the Laws of 1886 should be known and designated as the " standard fire insurance policy of the State of New York." The Legislature by chapter 429 of the Laws of 1887 ratified and confirmed the standard policy and special clauses filed pursuant to the act of 1886.

Section 121 of the Insurance Law, as amended by chapter 513 of the Laws of 1901, provided in part as follows:

" Standard fire insurance policy to be prescribed and used.— The printed blank form of a contract or policy of fire insurance, with such provisions, agreements or conditions as may be indorsed thereon or added thereto and form a part of such contract or policy, heretofore filed in the office of the Secretary of State by the Superintendent of Insurance or by the New York board of fire underwriters, pursuant to the provisions of chapter four hundred and eighty-eight of the laws of eighteen hundred and eighty-six shall be transferred by the Secretary of State to the office of the Superintendent of Insurance and, together with such provisions, agreements or conditions as may previous to the thirty-first day of December, nineteen hundred and one, be filed by the New York board of fire underwriters in the office of the Superintendent of Insurance and approved by him, which provisions, agreements or conditions shall be void if they are inconsistent with the standard fire insurance policy heretofore filed in the office of the Secretary of State, shall be known and designated as the ' standard fire insurance policy of the State of New York.' No fire insurance corporation, its officers or agents, shall make, issue or deliver for use, any fire insurance policy or the renewal of any such policy on property in this State, other than such as shall conform in all particulars as to blanks, size of type, context, provisions, agreements and conditions with such printed blank form of contract or policy; and no other or different provision, agreement, condition or clause shall be in any manner made a part of such contract or policy or indorsed thereon or. delivered therewith, except as follows, to wit: * * * Second. Printed or written forms of description and specifica-

tion, or schedules of the property covered by any particular policy, and any other matter necessary to clearly express all the facts and conditions of insurance on any particular risk not inconsistent with or a waiver of any of the conditions or provisions of the standard policy herein provided for."

These provisions were re-enacted without change, with the exception of slight changes in punctuation not materially affecting the construction, by the amendment made to section 121 by chapter 106 of the Laws of 1903, and by section 121 of the present Insurance Law (Consol. Laws, chap. 28; Laws of 1909, chap. 33), as amended by chapter 240 of the Laws of 1909, and by chapters 168, 638 and 668 of the Laws of 1910; and they were also re-enacted in the amendment made by chapter 181 of the Laws of 1913, but the words "previous to the thirty-first day of December, nineteen hundred and one," were omitted. That omission, however, has no material bearing on the point presented for decision by this submission.

Acting on the provisions of the section, as amended by said chapter 513 of the Laws of 1901, the blank form average clause, to which reference has been made, was filed in the office of the Superintendent of Insurance, and from the time it was so filed down to the present time it has been in use in the precise form in which it is found on the policy in question, as a rider in connection with the standard policy. After the amendment made by chapter 440 of the Laws of 1917, this blank form was refiled under the provisions of said amendment in precisely the same form, and approved by the Superintendent of Insurance on December 31, 1917.

The standard form in use prior to the amendment of 1917, exclusive of any authorized rider that might be agreed upon, contained *in the body of the policy* 112 numbered lines; and it was provided in lines 96 to 100, inclusive, as follows: " This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided

for by agreement or condition written hereon or attached or appended hereto."

And it was further provided in line 113, as follows: " This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be endorsed hereon or added hereto."

It is to be borne in mind that during all the period from 1886 down to the time the form of the policy was changed by the amendment of 1917, the statute prohibited the indorsing on or adding to the standard form of policy of any provision, agreement or condition inconsistent with the provisions of the standard form of policy; and yet throughout that period said blank form of rider, specified thereon as such *average* clause but better known and generally referred to as a coinsurance clause, was in use.

By section 2 of chapter 440 of the Laws of 1917 section 121 of the Insurance Law, as theretofore amended, was repealed, and by section 3 thereof a new section 121 was added to take effect January 1, 1918, so as to provide with respect to the standard policy and clauses that may be added thereto as follows:

" The printed blank form of a contract or policy of fire insurance adopted by the National Convention of Insurance Commissioners at its meeting held in the city of New York on the twelfth day of December, nineteen hundred and sixteen, shall be filed by the Superintendent of Insurance in his office on the first day of January, nineteen hundred and eighteen, with the date of such filing indorsed thereon by him and shall be known and designated as the ' Standard fire insurance policy of the State of New York,' * * * and no other or different provision, agreement, condition or clause shall be in any manner made a part of such contract or policy or indorsed thereon or added thereto or delivered therewith, except as follows, to wit: * * *

" Third. There may be printed in the space indicated by the words ' space for description of property,' or added to the policy at such space by agreement in writing thereon or by rider attached thereto the following: * * * 2. The extent of the application of insurance under the policy; 3.

The extent of the contribution to be made under the policy in case of loss or damage; 4. Any other matter necessary clearly to express all the facts and conditions of insurance on any particular risk.   Provided, however, that no such agreement or rider shall be inconsistent with or a waiver of any of the conditions or provisions of the standard fire insurance policy hereby established,   *   *   *.   Forms of riders, indorsements, clauses, permits, forms or other memoranda to be attached to and made a part of fire insurance contracts relating to property located in this State may be presented for filing in the office of the Superintendent of Insurance by any corporation, association or bureau maintained for the purpose of suggesting, approving or making rates to be used by more than one underwriter for insurances on property located in this State, and, when approved and filed by such Superintendent of Insurance, shall thereupon become standard forms of riders, indorsements, clauses, permits, forms or other memoranda and their use shall be required, as hereinbefore provided."

The policy described in the submission was the standard form referred to in the last amendment to the statute, and by it the numbered lines are transferred from the body to the back of the policy with some changes and are renumbered.   By the policy, in so far as here material, the defendant insured the plaintiff to the extent of the actual cash value of the property therein described to an amount   not exceeding $100,000 from all direct loss or damage by fire.   In the paragraph next to the last in the body of the policy it was provided that it was made and accepted subject to the preceding stipulations and conditions, " and to the stipulations and conditions printed on the back hereof, which are hereby made a part of this policy, together with such other provisions, stipulations and conditions as may be endorsed hereon or added hereto as herein provided."   The conditions printed on the back of the policy are printed in fine print and the lines thereof are numbered consecutively from 1 to 200.  Lines 72 to 77, inclusive, are as follows:

"ADDED CLAUSES. The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss or damage, and any other agreement not inconsistent with or a waiver of any of the conditions or

provisions of this policy, may be provided for by agreement in writing added hereto."

Lines 101 to 105, inclusive, are as follows:

" PRO RATA LIABILITY. This Company shall not be liable for a greater proportion of any loss or damage than the amount hereby insured shall bear to the whole insurance covering the property, whether valid or not and whether collectible or not."

It will be observed that the provisions contained in lines 101 to 105, inclusive, and the first three lines of the paragraph relating to " added clauses " of the new standard policy, are substantially the same as those theretofore contained in a single sentence in the former policy in lines 96 to 100, inclusive. The remaining provisions of the " added clauses " contained in lines 74 to 77, inclusive, to wit, " and any other agreement not inconsistent with or a waiver of any of the conditions or provisions of this policy, may be provided for by agreement in writing added hereto," are the same, in substance, as the provisions of the former standard policy in line 113 herein quoted, with the additional provisions that any such further agreement to be added to the policy shall not be inconsistent with or a waiver of any of the conditions or provisions of the policy. Although the former standard policy contained no such provision on the subject of inconsistent agreements, it will be observed that at all times from the enactment of chapter 488 of the Laws of 1886 to the amendment of section 121 in 1917, the statute itself forbade the making of any special agreement inconsistent with the provisions of the standard policy. It is also to be noted that by the changes made in the standard policy in 1917, the provisions with respect to the *pro rata* liability of the insurer where there is more than one policy on the property, and the provisions relating to the extent of the application of insurance under the policy and the contribution to be made by the insurance company in case of loss or damage, which were embodied in the same sentence in the former standard policy, have been separated and the *pro rata* provisions are now preceded by the heading " Pro Rata Liability," and the others are preceded by the heading "Added Clauses," and they precede the provisions relating to *pro rata* liability. This change has a significant bearing on the point

as to whether, as contended by the plaintiff, the provisions with respect to the extent of the application of the insurance and with respect to the contribution to be made by the insurer relate *only* to the application of the insurance and to contribution *as between insurance companies and concerning their pro rata liability*. If that were their only purpose, it would seem that they would have been left, as before, together. On this point, we are informed by counsel for the defendant that no form of clause or rider for a special agreement with respect to the *pro rata* liability, apportionment or contribution as between insurance companies has ever been filed; and it is, therefore, contended, with much force, I think, that the provisions with respect to the extent of the apportionment of the insurance and of the contribution to be made by the insurer were intended and understood to apply, if not exclusively at least also, to other agreements than those relating to *pro rata* liability as between insurance companies. That this is so is, I think, demonstrated by the history of so-called coinsurance and by the opinions of the courts with respect thereto prior to the enactment of any of the statutes to which reference has been made and during the time that the statutes prior to the amendment of section 121 in 1917 were in force. Coinsurance in ordinary fire insurance policies is an application, in part, of the general rule in use for centuries with respect to marine insurance, under which the insured was deemed a coinsurer with respect to the excess in value of the property insured over and above the amount of insurance thereon, or in other words, that part of the risk not covered by the insurance policies and he was entitled to share to that extent in any salvage. (Winter Marine Ins. 164, 165; 2 Arnould Marine Ins. § 1215; 2 Parsons Marine Ins. 405; 2 Philips Ins. § 1435.) Webster's International Dictionary defines " co-insurance " as follows: " Co-insurance * * *, that system of fire insurance in which the insurer is treated as insuring himself to the extent of that part of the risk not covered by his policy, so that any loss is apportioned between him and the insurance company on the principle of average, as in marine insurance or between other insurers," and " co-insurance clause. Fire insurance " as " the clause in a policy of insurance which provides for the application of the coinsurance system in case of loss." We find that the courts in

deciding cases involving coinsurance use the words "apportion-ment," "proportion" and "contribution," which are the words embodied in our statute and in the former and present standard form of policy, as applicable to that part of the insurance which, in such cases, the insurer himself is deemed to carry. (*Buse* v. *National Ben Franklin Insurance Co.*, 96 Misc. Rep. 229; affd., without opinion, 177 App. Div. 948; 226 N. Y. 589; *Farmers' Feed Co.* v. *Scottish Union Insurance Co.*, 173 id. 241; *Chesbrough* v. *Home Ins. Co.*, 61 Mich. 333; 2 Arnould Marine Ins. § 1215.)   It is manifest that the rates of insurance which it becomes necessary for insurance companies to charge depend upon the premiums received and losses sustained by them.   To the end that insurance rates shall operate equitably, the Legis-lature has by section 65 of the Insurance Law (added by Laws of 1911, chap. 416, as amd. by Laws of 1918, chap. 141) pro-vided against discrimination.   It is important both to preserve the solvency of insurance companies and for the equitable application of the rates charged for insurance, that such rates shall be determined upon scientifically.   Coinsurance clauses have frequently been declared to be just and reasonable and entirely consistent with the rule of indemnity, for they merely require the assured, as a condition of receiving a lower premium rate, to stand part of the loss himself, where he does not take out full insurance or insurance to the percentage of the value specified.   (*Belt* v. *American Central Ins. Co.*, 29 App. Div. 546; affd., 163 N. Y. 555; *Buse* v. *National Ben Franklin Insurance Co.*, *supra*; *Hartwig* v. *American Insurance Co.*, 169 App. Div. 60; *Christian & Daniel* v. *Niagara Fire Ins. Co.*, 101 Ala. 634; *Stephenson* v. *Agricultural Ins. Co.*, 116 Wis. 277; *Penn. Fire Insurance Co.* v. *Moore*, 51 S. W. Rep. 878; *Quinn* v. *Fire Assn.*, 180 Mass. 560; *Firemen's Fund Ins. Co.* v. *Pekor*, 106 Ga. 1; *Attorney-General* v. *Commissioner of Insurance*, 148 Mich. 566; Ostrander Ins. [2d ed.] § 208.)   It might, I think, fairly be assumed from the extent to which coinsurance clauses were in use in this State that the Legislature was aware of their use prior to the amendment of section 121 in 1917, but it clearly appears that it was, for in 1911 the Merritt committee, so called, which was a joint legislative committee appointed in 1910, had those clauses under consideration and with respect thereto reported as follows:

" " The general conclusions we reach with regard to the coinsurance clause are these: that the principle upon which it is founded, namely, that rates should be based upon the percentage of insurance carried, is not only sound but is absolutely requisite if the equities of the insured are to be preserved; second, that the coinsurance clause rightly recognizes that as a practical matter the responsibility for maintaining a given percentage of insurance must rest with the insured; third, that the operation of the agreement is automatic and fair.

" The objections that can be urged to the coinsurance clause are not on theoretical but on practical grounds and are entirely due to the fact that it is in use where it is not understood. It is perfectly true that the coinsurance clause is a dangerous thing for a person who does not understand it and for a person who does not keep close watch of his values,— not dangerous in the sense that the insured will not get what he ought to get, but in the sense that he will not get what he thinks he is going to get. But, should the government undertake to shield those who enter into a contract which they do not understand if this must be done at the expense of the real equities of the mass of the insured?

" The very purpose of the coinsurance clause is to place upon the insured the responsibility for ascertaining the value of his property, and for keeping it properly insured; and it goes without saying that, having assumed this responsibility, he must live up to it or he will be caught at a disadvantage.

" All that the insured needs to know, as a practical matter, is that in signing, say, an 80 per cent. coinsurance clause he agrees to keep at least 80 per cent. of the value of his property covered by insurance, and that in failing to do so he makes himself liable to the loss of part of his indemnity." (N. Y. Assembly Documents, 134th Session, 1911, vol. 20, No. 30, pt. 1, pp. 89, 90.)

It thus appears by practical construction that for a period of some thirty years prior to 1917, it was deemed by the Legislature, by the Superintendent of Insurance, by insurance companies, by those desiring the lower rate obtainable by coinsurance, and by the courts, that coinsurance clauses were authorized; and since they could be valid only on the theory that they were not inconsistent with the provisions of the

standard policy, it follows also that they were deemed to be consistent therewith. It is stated in the points for the defendant that in a few of our sister States coinsurance is prohibited by statute, and that in others it is expressly regulated by statute, and cases are cited which sustain the contention. In *Nelson* v. *Traders' Insurance Co.* (181 N. Y. 472) the court in sustaining as valid a clause added to the New York standard policy, to the effect that if a building in which the insured property was or any part thereof should fall, except as the result of a fire, the insurance on the building or its contents should immediately cease and in construing it as relieving the insurance company from liability for fire following immediately after the fall of the building, stated that the contract was one of indemnity against loss caused by fire and not against a loss " the proximate cause of which was in the working of some other agency; " and in holding that it was competent for the parties to agree that the company should not be liable for a loss from fire after the fall of the building, said: " It is quite competent, in so far as the provisions of a policy are concerned, to modify, or to restrict them, or to describe more particularly the actual risk assumed, by a written indorsement upon the instrument. ‘The Legislature left the parties free in that respect and it would have been competent for them to do so in this case, if the intention had been to insure the plaintiffs' premises as an independent, or separate, structure. As it is, this clause of the contract is plain; it is not unreasonable as a limitation of the insurance hazard and, unless the court is to make a new agreement between the parties, it should be enforced." It would seem, in the circumstances, that if the Legislature intended to limit the freedom of contract which it had theretofore sanctioned and acquiesced in, and to prohibit such agreements for average or coinsurance, there would have been embodied in the statute or· in the standard policy some provision clearly expressing or manifesting such intent (See *Firemen's Fund Ins. Co.* v. *Pekor, supra; Woollcott* v. *Shubert,* 217 N. Y. 212), but I find none. Plaintiff was at liberty under this clause to take out such insurance as would afford him full indemnity in case of a loss, but he evidently preferred not to pay the additional premium incident thereto and he thereby elected to become a coinsurer, so far

as the defendant is concerned, to the extent of the loss, which it refused to pay and which he now seeks to recover. Since the amendment of the statute and the changes in the standard form of policy in 1917, the Appellate Term in *Durham* v. *Stuyvesant Insurance Co.* (112 Misc. Rep. 440) decided that an agreement for coinsurance is inconsistent with the provisions of the standard policy and, therefore, void. I am unable to agree with that decision for the reasons herein stated.

It follows that the defendant is entitled to judgment on the submission but, pursuant to the stipulation, without costs.

CLARKE, P. J., SMITH and MERRELL, JJ., concur; PAGE, J., dissents.

Judgment ordered for defendant, without costs. Settle order on notice.