New York Life Insurance Company, Plaintiff, *v.* Glens Falls Insurance Company, Defendant.

Supreme Court, Special Term, New York County, April 18, 1945.

*Mendes Hershman* and *Dudley Davis* for plaintiff.

*Powers, Kaplan & Berger* for defendant.

SHIENTAG, J.   This motion presents, for the first time, the question of the applicability of the 80% coinsurance clause, of a policy of fire insurance, to small losses.   The issue arises on a motion made by the plaintiff to strike out the defendant's partial defense, pleading that the amount of the loss sustained was reduced by virtue of the failure of plaintiff to carry insurance in the amount of 80% of the sound value of the property.

The clause under consideration reads as follows: " NEW YORK STANDARD AVERAGE CLAUSE.   This company shall not be liable for a greater proportion of any loss or damage to the property described herein than the sum hereby insured bears to eighty per cent (80%) of the actual cash value of said property at the time such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon.

" In the event that the aggregate claim for any loss is both less than ten thousand dollars ($10,000) and less than five per cent (5%) of the total amount of insurance upon the property described herein at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required ".

Plaintiff is the owner of a building which, together with its permanent fixtures, was insured against loss by fire in the amount of $500,000 by three separate policies issued by the defendant and two other insurance companies against whom plaintiff has brought separate actions.

While the policies were in effect, a fire occurred in the insured premises causing damage to a portion of the seventh floor of the thirteen-story office building. Plaintiff notified the insurance companies of the damage which it estimated at $6,488.82. Following an examination by an adjuster, acting for all of the companies, they refused to pay the sum demanded by plaintiff. Accordingly, proofs of loss, as required by the policies, were filed.

Subsequently, the insurers, pursuant to what they claimed to be the terms of the policies, demanded appraisal and appointed an appraiser. After objection, plaintiff also designated an appraiser and an umpire was appointed by the Supreme Court. The appraisers agreed that the amount of loss or damage was $6,296.82, and the appraiser designated by the insurance companies and the umpire appointed by the court fixed $1,600,000 as the sound value of the insured building. The appraiser appointed by the assured took no part in fixing the sound value. The insurers again refused to make payment, claiming that plaintiff was entitled only to $2,459.70. This sum they arrived at in the following manner: 80% of $1,600,000, the sound value of the insured building, was $1,280,000; under the 80% coinsurance clause, the ratio of $500,000, the actual insurance on the property, to $1,280,000, representing the 80% of the sound value of the property, was applied to the full loss of $6,296.82, and resulted in the figure of $2,459.70, which sum the insurers stand ready to pay.

Coinsurance has the effect of preventing one who is insured for a small part of actual value, and who has paid a correspondingly small premium, from collecting as much, in the event of loss, as one who is insured for a large percentage of value and who has paid a correspondingly large premium. " The co-insurance clause, requiring the insured to maintain insurance to an amount equal to a specified percentage of the value of the

insured property, under penalty of becoming co-insurer to the extent of such deficiency, is valid ". (Vance on Insurance [2d ed.], § 209.)

Only a small number of fires result in the total destruction of the property insured. Many property owners, realizing that the possibility of total destruction is so slight, insure merely for a small percentage of the value of the building or goods. If, for example, they can, by insuring the property for only 25% of its value, receive full indemnity for any ordinary loss, they are tempted to accept this partial coverage at a cost of only one fourth of that required for complete coverage.

To prevent the property owners from taking out such a small amount of insurance, and thereby decreasing the premium payments, the insurers commonly insert, as a rider to the standard policy, the coinsurance clause. This results in reducing the recovery in case of a partial loss, though in case of total loss, the insurer is liable for the amount named in the policy. For example, let us assume that the property is worth $100,000, the loss is $10,000, and the insured carries a $20,000 policy. If the policy contained no coinsurance clause, the insurer would recover $10,000, but if the policy contained the usual 80% coinsurance clause, his recovery would be only $2,500, since he carried only one fourth of the $80,000 insurance required.

. The validity of the coinsurance clause has been sustained; its purpose has been held to be sound. (*Aldrich* v. *Great American Insurance Co.*, 195 App. Div. 174, 183–184.) In that case the court said: " It is manifest that the rates of insurance which it becomes necessary for insurance companies to charge depend upon the premiums received and losses sustained by them. To the end that insurance rates shall operate equitably, the Legislature has by section 65 of the Insurance Law  *  *  * provided against discrimination. It is important both to preserve the solvency of insurance companies and for the equitable application of the rates charged for insurance, that such rates shall be determined upon scientifically. Coinsurance clauses have frequently been declared to be just and reasonable and entirely consistent with the rule of indemnity, for they merely require the assured, as a condition of receiving a lower premium rate, to stand part of the loss himself, where he does not take out full insurance or insurance to the percentage of the value specified.  *  *  * ' The general conclusions we reach with regard to the coinsurance clauses are these:  *  *  * The very purpose of the coinsurance clause is to place upon the insured the responsibility for ascertaining the value of his

property, and for keeping it properly insured; and it goes without saying that, having assumed this responsibility, he must live up to it or he will be caught at a disadvantage. All that the insured needs to know, as a practical matter, is that in signing, say, an 80 per cent coinsurance clause he agrees to keep at least 80 per cent of the value of his property covered by insurance, and that in failing to do so he makes himself liable to the loss of part of his indemnity.' ''.

The reasoning of the plaintiff, in effect, is that there can be no ascertainment of the actual sound value of the entire insured property, in the absence of inventory or appraisement of the undamaged property; that, therefore, the coinsurance clause must be deemed waived in connection with small claims because the parties, without a special appraisement, are not enabled to determine and to apply the formula prescribed for fixing the ratio of the insurance carried to the sound value of the entire property. Unless the coinsurance clause is so interpreted, the plaintiff claims, it is meaningless when applied to small losses.

This reasoning, it seems to me, is based neither upon logic, nor upon a sound construction of the clear and unmistakable language of the policy. Waiver will not be presumed nor will it be inferred; it must be clearly and unmistakably expressed. There is nothing in the language of the clause to indicate a waiver such as the plaintiff suggests. Nevertheless, the clause has a definite meaning. As I interpret this clause (and it applies to partial damage to a building as well as to fixtures or goods) all that it does is to make it unnecessary for the assured to furnish any inventory or appraisement of the undamaged property in the event of a small loss. Under this clause the company may resort to any method other than an '' appraisement '', under the policy, to ascertain the sound value of the entire property covered by the insurance. It may have ex parte estimates made, it may secure the opinion of experts, it may examine the books of account of the assured, it may examine the assured under oath. The company, in this manner, would be able to ascertain the sound value of the property and refrain from requiring the assured to go through an expensive and burdensome inventory or appraisement of the undamaged property where the loss is a relatively small one.

I find no case in this jurisdiction specifically passing upon the precise question. The only case which at all touches the subject, and which plaintiff concedes is not a square holding, is *Pinsky* v. *Minneapolis Fire & Marine Insurance Co.* (225 App. Div. 326, 329). There the Appellate Division said: '' The agreed statement of facts contains only the *pro rata* liability

clause, and no mention is made of any eighty per cent clause in the defendant's policy, and, therefore, it cannot be considered upon this submission. And, further, in no event would such eighty per cent clause apply to this small partial loss where the insurance was many times the value of the property destroyed.''

In that case the New York Standard Average Clause was not before the court for construction. Moreover, in that case, the amount of insurance was $8,500, and the value of the insured property was $4,700, and the amount of damage $1,692.92. The damage was more than 5% of the amount of insurance.

The assured in this case has a just grievance. Despite its earlier objection, it yielded, under protest, to the insurers' demand for an appraisal that was to include the determination of the sound value of the entire property covered by the insurance. Under the Standard Average Clause as I construe it, the loss claimed being less than $10,000, and less than 5% of the insurance carried, all that the insurers were entitled to, under the policies, was an inventory and an appraisal of the damaged items of property and not of the undamaged property or of the sound value of the entire property. Otherwise, the clause we are considering would have practically no value at all as applied to small losses. I attach no significance to the use of the word '' special '' in connection with the waiver of the requirement of an inventory or appraisal of the undamaged property; there is no such distinction made in any clause of the policy to which my attention has been called.

A policy of fire insurance is a commercial contract; it is written for business men and must be given a natural, rather than a forced construction. It must be viewed through the eyes of an ordinary business man reading its provisions. If a waiver of the coinsurance provisions had been intended, in the case of small losses, it would have been the simplest thing in the world to say so. The courts may not read into a policy what is not there; particularly is this true where the express language of a clause has a clearly defined meaning and purpose. The 80% coinsurance clause is a salutary one; its purpose is sound and its validity has been upheld by the courts. There is no reason to give it a strained and narrow construction, not warranted by its language nor by the legitimate purpose sought to be accomplished.

The plaintiff, having conceded for the purposes of this motion, that the sound value arrived at in the appraisal is the correct one, the motion to dismiss the partial defense, as insufficient in law, is denied. Settle order.