OPINION OF THE COURT
Bernard J. Fried, J.
This action arises out of a dispute between the plaintiff New York Career Institute (NYCI), a paralegal and court reporter *735 school, and the defendant, its insurer, Hanover Insurance Company, concerning a claim for loss of business income, following the September 11, 2001 (9/11) terrorist attacks, which caused damage to NYCI’s premises, requiring it to suspend operations for a period of time.
Defendant has moved for summary judgment and the plaintiff has cross-moved for partial summary judgment. While there is a series of issues, essentially, the dispute turns on whether a coinsurance provision applies to a civil authority loss.
The undisputed facts leading up to this dispute are as follows: on February 1, 2001, Hanover issued an insurance policy, which included coverage for business interruption losses and extra expense. On 9/11, NYCI sustained damage to its premises which required suspension of operations, causing it to suffer loss of business income, which it claimed was in the amount of $1,785,988. Timely notice was provided to Hanover concerning the loss, Hanover accepted its liability, and made a $50,000 advance payment on the claim.
Thereafter, a dispute arose as to the amount of the loss and to evaluate NYCI’s claim. Hanover engaged T.D. Davidson, Certified Public Accountants, which prepared a report (Davidson report), dated June 6, 2002, which concluded the claim was subject to a coinsurance assessment of 75.19% which meant a collectible percentage of 24.81%. This calculation was based on a determination that NYCI had failed to purchase sufficient coverage based upon its income, which Davidson determined to be $2,821,369, which it concluded was the required insurance, and not $700,000, the policy coverage. Based on these calculations, Davidson computed a “Collectible Loss of Income, plus ‘Extra Expenses’,” of $83,061. Following this report, Hanover made a supplemental claim payment of what it considered to be the “undisputed amount.”
The Davidson report was reviewed on behalf of plaintiff, NYCI, by Kenneth Greenhut, CPA, a partner in McGladrey & Pullen, Certified Public Accountants. In his report (Greenhut report), dated August 27, 2002, Greenhut made differing calculations concerning various items, concluded that the coinsurance “calculation is in error,” and “recomputed the amount of coinsurance” to arrive at a “co-insurance percentage” of 41.16%. Greenhut’s computations resulted in a collectible loss, together with extra expenses, of $425,559.
The Greenhut report led to a further report from Davidson, dated October 8, 2002, which adhered to its earlier coinsurance calculation of 24.81%.
*736 Because of this disagreement over the collectible amount, Hanover made a written demand, dated October 28, 2002, for appraisal as permitted under the insurance policy. Hanover selected as its appraiser James DiChaira, a certified public accountant with Magnan Grazzaro & Associates, CPA, LLC; NYCI appointed as its appraiser Anthony D’Amico, SPPA,[1] a principal of Adjusters International; and the parties selected as the umpire Charles Duca, vice-president of Marsh USA, Inc. In advance of the appraisal proceeding, D’Amico wrote a letter, dated August 4, 2003, to both DiChaira and Duca, setting forth his view that the coinsurance provision did not apply to a civil authority loss, because in his opinion, “[t]o apply coinsurance to a civil authority loss would be to reduce a loss which has already been reduced, in effect penalizing the insured twice.” This was disputed by DiChaira, who took the position that the coinsurance provision was applicable. Because Duca, the umpire, viewed the matter as one of “coverage interpretation, rather than damage assessment and thus, beyond the authority of the appraisers and Umpire to decide,” an appraisal award was issued, certified only by D’Amico and Duca, which did “not reflect or resolve the issue of co-insurance.”
When Hanover refused to pay the appraisal award this lawsuit ensued.
At oral argument on this motion and cross motion, I inquired whether a “solution” would be to send this matter back to the appraisers. Counsel for Hanover agreed to its resubmission “for the assessment and calculation of that [coinsurance] penalty.” While counsel for NYCI thought it could “conceivably” go back, he stated that the issue — one of policy interpretation — was properly before me. Thinking that a remand of the matter, together with all the papers submitted on the issue, would be a preferable nonjudicial solution, in the context of the appraisal agreement, I asked that the parties submit a “proposed remand order.” Thereafter, by letter dated October 18, 2004, Hanover submitted a proposed order, directing that the “issue of mathematical calculation of the coinsurance assessment, if any, applicable to the claim of New York Career Institute arising out of the September 11, 2001 loss shall be determined by appr[a]isal.” There was no reference to the issue of the applicability of coinsurance to civil authority. Moreover, the letter stated that the umpire, Duca, repeated his belief that the issue “should be *737 made by a Court, [however] he expressed a willingness to consider the issue as framed by the Court, i.e., the mathematical calculation of the coinsurance assessment, if any, applicable to this case.” This was followed by a letter from NYCI, dated October 19, 2004, which requested, in light of the umpire’s statement “that he would not decide the issue,” that I “decide the outstanding motions and not refer it back to appraisal.” However, if I determined to remand the matter, NYCI submitted a proposed order, directing that the panel “finally determine the issue of the applicability of coinsurance to a civil authority loss.” This latter proposed order was objected to by Hanover, which wrote: “We object to the proposed Order submitted by plaintiff, which purports to authorize the panel to depart from the express terms of the contract and pass upon legal arguments raised by plaintiff in an attempt to avoid application of the coinsurance clause.” In light of the disagreement over the terms of my remand proposal, the issue, whether, under the terms of the subject insurance policy, coinsurance applies to a civil authority loss, is one for me to determine. The relevant policy clauses are as follows:
“Coinsurance
“The policy declarations page provides “COVERAGE
“BUSINESS INCOME OTHER THAN RENTAL
“VALUE INCL EXTRA EXPENSE “LIMIT OF INSURANCE: $700,000
“COINSURANCE 100%
“Business Income Coverage “The ‘BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM’ provides:
“E. ADDITIONAL CONDITION “Coinsurance
“If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.
“We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than [the amount as calculated in a series of steps set forth in this section of the policy] . . .
*738 “We will pay the amount determined ... or the limit of the insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.
“The ‘BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM’ also provided on page 1 (Section A2) under the heading “ ‘Covered, Causes of Losses': ‘See applicable Causes of Loss Form as shown in the Declarations.’
“Civil Authority
“The ‘BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM' also provides as follows:
“Civil Authority. We will pay you for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of Civil Authority . . . caused by or resulting from and Covered Cause of Loss.”
Coinsurance, a limitation on the liability of the insurance company (e.g. 12 Couch on Insurance 3d § 175:52), “has the effect of preventing one who is insured for a small part of actual value, and who has paid a correspondingly small premium, from collecting as much, in the event of loss, as one who . . . has paid a correspondingly large premium.” (New York Life Ins. Co. v Glens Falls Ins. Co., 184 Misc 846, 848 [Sup Ct, NY County 1945].) It creates “a relative division of the risk between the insurer and the insured.” (15 Couch, supra § 220:3.) Such clauses may apply to the loss of business income, or what is often characterized as business interruption coverage (e.g., Apparel City Sewing Mach. Co., Inc. v Transamerica Ins. Group, 129 Cal App 3d 400, 181 Cal Rptr 64 [Ct App 1982]; 15 Couch, supra § 220:22). Civil authority, when contained in an insurance policy, refers to the situation when a civil authority prohibits access to the insured’s premises resulting in a total loss of business income. (See 54th St. Ltd. Partners v Fidelity & Guar. Ins. Co., 306 AD2d 67 [1st Dept 2003].)
No authority has been provided, and none has been found, which discusses the relationship between coinsurance and civil authority.[2] It is axiomatic that unambiguous provisions of an insurance contract “must be given their plain and ordinary mean *739 ing.” (Roundabout Theatre Co. v Continental Cas. Co., 302 AD2d 1, 6 [1st Dept 2002].) This, of course, also means, as Justice Gonzalez wrote in Roundabout, that “[c]ourts ‘may not make or vary the contract of insurance to accomplish [their] notions of abstract justice or moral obligation’.” (Id. [citations omitted].)
Here, NYCI argues that application of coinsurance to a civil authority loss would result in a “double-penalty,” because the loss would have been reduced first by the coinsurance percentage, and then by the “ ‘Civil Authority’ loss [which] already represents a reduced amount of the loss by time.” Cited in support of this argument is the provision of the policy which provides for payment of “the actual loss of business income,” up to a defined period of time. Therefore, NYCI contends that reading the policy language to require the application of coinsurance to the civil authority loss is not only an incorrect construction, but that it “would be grossly inequitable.”
This argument is unpersuasive, since the proposed reading is contradicted by the clear and unmistakable provisions of the policy. Notably, and significantly, the policy declarations page states that the business income, including extra expense, is subject to 100% coinsurance. Furthermore, the “Business Income (and Extra Expense) Coverage Form,” under the heading “E. Additional Condition,” explicitly provides, where “Coinsurance” is set forth in the declarations, as in this policy, the insured “will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than [the amount following the coinsurance computation].” (Additional emphasis added.) The use of the word “any” would make little sense if it did not include civil authority losses, unless expressly stated otherwise. To do so would be to ignore the Court of Appeals’ recent restatement of the rule that “[a]n insurance contract should not be read so that some provisions are rendered meaningless.” (County of Columbia v Continental Ins. Co., 83 NY2d 618, 628 [1994].)
Certainly, the civil authority clause provides that Hanover “will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority.” But this language does not end the analysis, since it does not expressly exclude the application of coinsurance, as is done with *740 the clause concerning “Extra Expense Additional Coverage” (section E 12), which provides that “[t]his condition (coinsurance) does not apply to the Extra Expense Additional Coverage.” Clearly, the drafters knew how to exclude coinsurance[3] and chose not to do so with regard to civil authority loss. Nor does the term “actual” loss change the result. A commonsense reading of this term is that the insurer will pay for the business income actually lost, upon application of the coinsurance percentage. Buttressing this reading is the language of a coverage option — not selected by NYCI — where business income includes rental value, and under such option it is provided that Hanover “will pay for the actual loss of Business Income,” as to which the coinsurance percentage is certainly applicable. This demonstrates that merely using the term “actual” does not warrant the conclusion that coinsurance is precluded when the loss results from civil authority. As aptly stated in New York Life Ins. Co. (184 Misc, supra at 851): “If a waiver of the coinsurance provisions had been intended ... it would have been the simplest thing in the world to say so.” This the parties did not do.
This analysis resolves the breach of contract claim, which will be held in abeyance and the matter returned to appraisal with a direction to determine the amount of loss in compliance with the policy’s coinsurance provision.
Turning to the other causes of action: the second cause of action alleges fraud in that Hanover allegedly falsely agreed to be bound by the appraisal. However, as set forth in the letter demanding appraisal (letter from James Boos, dated Oct. 28, 2002), the demand was subject to the provisions of the insurance policy, which undisputedly contains the following language: “If there is an appraisal, [Hanover] will still retain [its] right to deny the claim.” Since this claim relates directly to the alleged breach of contract, i.e., it is alleged in the first cause of action that Hanover has refused to pay the appraisal award, it cannot be the basis for a fraud cause of action and must be dismissed (e.g., Giannisis v Maniatis, 160 AD2d 629 [1st Dept 1990], appeal dismissed 76 NY2d 888 [1990]). The third cause of action, which alleges negligent misrepresentation, likewise must be dismissed, since it, too, relates to the nonperformance of the *741 contract (e.g., Miller v Volk & Huxley, 44 AD2d 810 [1st Dept 1974]). The fourth cause of action, alleging fraud on the public, similarly relates to the breach of contract action and must be dismissed.
Accordingly, it is ordered that the defendant’s motion for summary judgment is granted to the extent that the first cause of action is held in abeyance and the matter returned to appraisal, with a direction to determine the amount of loss in compliance with the policy’s coinsurance provision; and it is further ordered that within 10 days from the date of the entry of this order, the parties are directed to resubmit this matter to the appraisal panel for its determination; and it is further ordered that the plaintiffs cross motion for partial summary judgment is denied.

. Senior professional public adjuster.

. NYCI has submitted an affidavit from its appraiser, D’Amico, who has stated that “both a civil authority provision and a coinsurance penalty should he applied concurrently to a loss.” Hanover objects to this affidavit as inadmissible on this motion for summary judgment. Inasmuch as the policy is *739 unambiguous, I have not considered this extrinsic evidence (see R/S Assoc, v New York Job Dev. Auth., 98 NY2d 29, 33 [2002]; see also Abner, Herman & Brock, Inc. v Great N. Ins. Co., 308 F Supp 2d 331, 336 [SD NY 2004]).

. A further example appears in the policy concerning maximum period of coverage, although not elected by NYCI as an additional coverage: “The Additional Condition, Coinsurance, does not apply to this Coverage” (section F 1).