11-3670 (L)
Quaker Hills, LLC v. Pacific Indemnity Co.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2012

(Argued: November 13, 2012                    Decided: August 29, 2013 )

Docket Nos. 11-3670 (Lead) 11-3780 (XAP)

_____

QUAKER HILLS, LLC,

Plaintiff-Appellee-Cross-Appellant,

- v. -

PACIFIC INDEMNITY CO.,

Defendant-Appellant-Cross-Appellee.
_____

Before:  KEARSE, WINTER, and POOLER, Circuit Judges.

Appeal and cross-appeal from a judgment of the United States District Court for the Southern District of New York, Deborah A. Batts, Judge, declaring defendant insurer liable for the full amount of loss coverage shown in a fire insurance policy, notwithstanding an apportionment-of-loss clause in the policy stating that the insurer would pay only 38 percent of any loss, and ruling that defendant is not liable for replacement costs in excess of the loss coverage shown in the policy. See 2011 WL 4343368 (Aug. 15, 2011).

AFFIRMED in part; CERTIFIED in part to the Court of Appeals for the State of New York.

DENNIS T. D'ANTONIO, New York, New York (Joshua L. Mallin, Weg & Myers, New York, New York, on the brief), for Plaintiff-Appellee-Cross-Appellant.

JOHN A. NOCERA, New York, New York (John P. Foudy, Rosner Nocera & Ragone, New York, New York), for Defendant-Appellant-Cross-Appellee.

KEARSE, Circuit Judge:

Defendant Pacific Indemnity Co. ("Pacific"), which issued a $14,388,000 fire insurance policy to plaintiff Quaker Hills, LLC ("Quaker Hills"), on a custom-built home that was destroyed by fire during the policy period, appeals from so much of a final judgment of the United States District Court for the Southern District of New York, Deborah A. Batts, Judge, as granted summary judgment to Quaker Hills on its claim for a declaratory judgment that an apportionment-of-loss clause in the policy, purporting to reduce Pacific's total liability to 38 percent of any covered loss, is void as a matter of New York law, and that Pacific is liable to Quaker Hills for the entire amount of loss coverage shown in the fire insurance policy. Quaker Hills cross-appeals from so much of the judgment as ruled that it is not entitled to recover replacement costs in excess of the stated loss coverage amount on the house. For the reasons that follow, we reject Quaker Hills's arguments on the cross-appeal; on the appeal, we certify to the Court of Appeals for the State of New York questions as to whether the apportionment-of-loss clause in the fire insurance policy is enforceable under New York law.

# I. BACKGROUND

At all pertinent times, Quaker Hills, a limited liability company incorporated in New York, owned real property in Pawling, New York, on which its principal, Trevor Davis, a Manhattan-based real estate developer, built a home in or about 2005. In March 2009, the home was destroyed by fire, a loss covered by a homeowner's insurance policy (the "Applicable Policy" or "Policy") issued to Quaker Hills by Pacific. The following description of the Policy, together with its several antecedent policies and its history, is taken largely from the Memorandum and Order of the district court, reported at 2011 WL 4343368 (Aug. 15, 2011). The court's description, which unless otherwise noted below is not substantially in dispute, was based on statements by the parties filed pursuant to Rule 56.1 of the Local Rules for the Southern District in connection with each side's motion for summary judgment.

A. The Insurance Policies

Quaker Hills first obtained homeowner's insurance from Pacific on the home and its contents for a one-year period beginning in December 2005. The coverage limits were $10,000,000 for the dwelling and $4,000,000 for the contents. See 2011 WL 4343368, at *1. The premium charge for this first policy was $50,273. See id.

In August 2006, Pacific obtained an insurance replacement cost appraisal that indicated that the home's replacement value was $13,302,000. See id. Intermediaries in the various dealings between Quaker Hills and Pacific prior to 2008 with regard to the subsequent policies covering the

home included insurance broker Haskell Brokerage Corp. ("Haskell") and a company called C & S Planning, to which Davis's father-in-law Irwin Cohen was a consultant. In early October 2006, Haskell informed Cohen that the existing policy would be canceled on October 14. (Pacific contends that the reason was nonpayment of premium then due; Quaker Hills does not dispute that Haskell so informed Cohen, but does dispute the reason.) The record does not indicate that the first policy was in fact canceled. Indeed, Quaker Hills shortly received valuation questions with respect to a renewed policy:

> On October 13, 2006, Janice Collins of C & S Planning emailed Davis' assistant Delia [sic] Mitchell seven questions to answer concerning the "re-write" of the [existing p]olicy. . . . On October 18, 2006, Collins forwarded to Haskell's Ed Redbord a fax cover note enclosing the email with Davis' handwriting on it, and stated in her cover memo: "Ed, as per our conversation-- This is what Trevor wrote on it. Janice". . . . In this email, Davis answered the first five questions regarding the value of various contents of the house by placing zeros next to them. . . . For the final question, reading "desired amount of replacement coverage you want for dwelling? (appraised @ $13,000,000 at August appraisal)," Davis wrote "5,000,000." . . . . Davis does not dispute that he made these notations; however, he claims these were not answers to the questions since he had no way of knowing what the estimated value of the items was.

2011 WL 4343368, at *1 (emphases added).

In November 2006, Pacific issued a renewal policy ("Second Policy") for the period December 15, 2006 to December 15, 2007, which provided coverage for the dwelling in the amount of $13,302,000--reflecting the recent appraisal--and no coverage for the home's contents. See id. at *2. The stated premium for the Second Policy was $50,273. However, Pacific "also added a 38% apportionment of loss clause," to this policy, id., which stated as follows:

> IN THE EVENT OF A COVERED LOSS TO YOUR HOUSE, OTHER PERMANENT STRUCTURE(S) OR CONTENTS, INCLUDING ALL

-4-

RELATED COVERAGES FOR YOUR HOUSE AND CONTENTS, THE AMOUNT OF THE COVERED LOSS WILL BE APPORTIONED BETWEEN YOU AND US AS FOLLOWS. FIRST, WE WILL APPLY THE BASE OR ANY APPLICABLE SPECIAL DEDUCTIBLE TO THE AMOUNT OF THE COVERED LOSS. SECOND, WE WILL PAY 38% OF THE AMOUNT OF THE COVERED LOSS REMAINING AFTER THE APPLICATION OF THE BASE OR SPECIAL DEDUCTIBLE. . . . THE REMAINING 62% OF A COVERED LOSS TO YOUR HOUSE . . . IS THE AMOUNT APPORTIONED TO YOU.

(Second Policy, Coverage Update, at 2-3 (emphasis added).) This "mean[t] that [Pacific's] alleged maximum liability for a covered loss would be $5,054,720 (38% of the stated coverage amount of $13,302,000)," 2011 WL 4343368, at *2; and Quaker Hills's premium was reduced from $50,273 to $20,777, see id. The district court noted that Pacific "claim[ed] it added the apportionment of loss clause to provide approximately the requested $5,000,000 in coverage," and that Quaker Hills "denie[d] ever requesting less than full coverage under the policy." Id.

On January 14, 2007, that Second Policy was canceled for nonpayment of premium. Coverage was not restored until June 20, 2007. At Plaintiff's request, a new policy ("Third Policy") was issued, effective June 20, 2007, through June 20, 2008. The Third Policy "also contained a 38% apportionment of loss clause and the total premium was $22,633." Id.

Before the end of the period covered by the Third Policy, a fourth policy was issued, "effective January 17, 2008 through January 17, 2009, . . . . contain[ing] the same 38% apportionment of loss clause as the [third p]olicy." Id. The fourth policy "had a policy limit of $14,388,000." Id. It also contained an "Extended Replacement Cost" coverage provision (versions of which had also been included in the Second and Third policies) pursuant to which, under certain conditions, Pacific would pay all reconstruction costs, "even if this amount is greater than the amount of coverage for

your house shown in your Coverage Summary," id. at *6 (internal quotation marks omitted). However, Pacific's obligation under that provision was limited, in part, as follows:

> If you cannot repair, replace or rebuild your house because your primary mortgagee or its assignees has recalled your mortgage, we will pay the reconstruction cost up to the amount of coverage shown in the Coverage Summary for your house, minus what is due to the mortgagee.

Id. (internal quotation marks omitted). This fourth policy "was renewed for another year running from January 18, 2009 through January 18, 2010," id. at *2, and contained the terms of the Policy in effect at the time of the fire that destroyed the home.

After the fire, Quaker Hills submitted a timely claim to Pacific, seeking more than $26.5 million in losses and extended replacement costs. Pacific refused to pay extended replacement costs and refused to pay more than 38 percent of the $14,388,000 stated loss coverage. The home was never rebuilt.

In September 2009, Bank of America (the "Bank"), which held the mortgage to the property, commenced a foreclosure action with respect to the home. Thereafter, Quaker Hills and the Bank entered into a Standstill and Forbearance Agreement, in which Quaker Hills acknowledged that it was in default and the Bank agreed to delay demanding full payment of the outstanding mortgage. Pacific agreed to pay directly to the Bank the amount that Pacific conceded was owed under the policy, i.e., approximately $5.5 million, or 38 percent of the stated coverage amount. See 2011 WL 4343368, at *2-*3.

B.  The Present Action

Quaker Hills commenced the present action in the district court, with jurisdiction premised on diversity of citizenship, alleging that Pacific breached the insurance contract by refusing to pay the full stated amount of loss coverage in the Policy, i.e., $14,388,000, and to pay replacement costs.  Quaker Hills sought a declaratory judgment to that effect, along with damages totaling approximately $26.5 million including the replacement costs.  In support of its claim for payment of the full amount of loss coverage, Quaker Hills asserted, inter alia, that the Policy's apportionment-of-loss clause is unenforceable in New York State (the "State") because it does not conform to the minimum requirements imposed by New York law as reflected in the State's Standard Fire Insurance Policy.

Pacific opposed Quaker Hills's challenge to the apportionment-of-loss clause, contending, inter alia, that such clauses are analogous to enforceable co-insurance clauses, and that, in any event, Davis had specifically insisted on the apportionment-of-loss clause in order to reduce the premiums payable on the policies.  Pacific opposed Quaker Hills's claim for replacement costs on the ground that Quaker Hills had not been able to rebuild the house because its mortgage on the property had been recalled.  Following discovery, each side moved for summary judgment.

In its Memorandum and Order dated August 15, 2011, the district court, after describing the events as set forth in Part I.A. above, granted the motion of Quaker Hills in so far as it sought a declaration that the Policy's apportionment-of-loss clause was void under New York law and that Quaker Hills was entitled to $14,388,000.  See 2011 WL 4343368, at *6. The court denied the motion of Pacific to dismiss the complaint or limit Quaker Hills's recovery to 38 percent of that amount.  The court also rejected Quaker Hills's claim for replacement costs.  See id.

-7-

#### 1. The District Court's Ruling as to the Stated Amount of Loss Coverage

As to the apportionment-of-loss clause, the district court stated that "[a]lthough the parties dispute whether Davis consented to the apportionment of loss clause," and although "the factual record is clear that he at worst initiated, and at best was aware of and assented to its inclusion in the policy," his "initiation or consent to the clause [wa]s irrelevant" "because the clause is void as a matter of law under New York law." 2011 WL 4343368, at *2 n.1. The district court noted that New York law has codified a Standard Fire Insurance Policy that sets minimum coverage standards for such policies, see N.Y. Ins. Law § 3404 (McKinney 2011), and that "a fire insurance policy must include 'terms and provisions no less favorable to the insured than those contained in the standard fire policy,'" 2011 WL 4343368, at *4 (quoting § 3404(f)(1)(A)). Although an insurance company is free to offer the insured terms that are more favorable than the mandated minima,

> a policy [that] contains a less favorable term[ than the minimum provided in the State's standard fire policy] "is enforceable as if it conformed to the statutory standard." 1303 Webster Ave. Realty Corp. v. Great Am. Surplus Lines Ins. Co., 63 N.Y.2d 227, 231, 481 N.Y.S.2d 322, 323, 471 N.E.2d 135 (1984); see also SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., L.L.C., 381 F.Supp.2d 250, 257 (S.D.N.Y.2005).

2011 WL 4343368, at *4. The district court noted the statutory minima set out in § 3404(e), which provides that the insurer must insure the insured

**TO THE LESSER AMOUNT OF EITHER:**

>  1) THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME OF THE LOSS, OR

>  2) THE AMOUNT WHICH IT WOULD COST TO REPAIR OR REPLACE THE PROPERTY WITH MATERIAL OF LIKE KIND AND

-8-

QUALITY WITHIN A REASONABLE TIME AFTER SUCH LOSS, WITHOUT ALLOWANCE FOR ANY INCREASED COST OF REPAIR OR RECONSTRUCTION BY REASON OF ANY ORDINANCE OR LAW REGULATING CONSTRUCTION OR REPAIR, AND WITHOUT COMPENSATION FOR LOSS RESULTING FROM INTERRUPTION OF BUSINESS OR MANUFACTURE, OR

3) TO AN AMOUNT NOT EXCEEDING _____ DOLLARS . . . .

N.Y. Ins. Law § 3404(e). The district court thus stated that under "New York's Standard Fire Insurance Policy, . . . the policy must at least provide the lesser of either [1] the actual cash value of the property at the time of loss; [2] the replacement cost; or [3] the value of the property as predetermined in the policy." 2011 WL 4343368, at *4 (emphases added). The court noted that

> [t]he third provision in the New York Standard Fire Policy allows for valued policies. Nichols v. Hartford Fire Ins. Co., 61 A.D.2d 555, 557, 403 N.Y.S.2d 335, 336-37 (N.Y.App.Div.1978); see also N.Y. Pattern Jury Instructions § 4:49. A valued policy is one in which the value of the property covered by the policy is predetermined by the parties so that in the event of a total loss, it is not necessary to prove the actual value, and the agreed-upon value is conclusive unless there has been fraud or mistake. Id.

2011 WL 4343368, at *4 n.5 (emphasis added).

> Therefore, New York's Standard Fire Policy, "clearly sets a minimum floor of the lesser of the three options," Woodhams v. Allstate Fire and Cas. Co., 748 F.Supp.2d 211, 217 (S.D.N.Y.2010) (emphasis added), and the policy must at least provide the lesser of either the actual cash value of the property at the time of loss; the replacement cost; or the value of the property as predetermined in the policy.

2011 WL 4343368, at *4. In the present case,

> [t]he [Applicable] Policy, . . . in effect at the time of the fire loss, provides coverage for a loss up to $14,388,000, with an extended replacement cost provision, which would allow a homeowner to collect the replacement cost if certain conditions precedent were met. Hence, the [Applicable] Policy in its unmodified form meets the minimum standards of the Standard Fire Insurance Policy by providing the replacement cost of the property. However,

> with the apportionment of loss clause, the [Applicable] Policy provides substantially less coverage than the minimum, by providing only 38% of the replacement cost.

Id. (emphases added).

The district court stated that it was "unable to find specific case law in New York that addressed anything like the apportionment of loss clause here"; but the court found it "clear" that the apportionment-of-loss clause in the Policy was "a less favorable term than New York's Standard Fire Policy." Id. at *5. Thus, the court concluded that the Policy's apportionment-of-loss clause was void as a matter of New York law, and that the Policy must be enforced as if its terms complied with the statute. See id. at *6.

> What the parties got with the [Applicable] Policy was a fire policy that, on its face, had a policy limit of $14,388,000. However, the apportionment of loss clause did nothing other than reduce that policy limit of $14,388,000 by 62%--to $5,467,440--and allow [Quaker Hills] to pay 62% less in premiums. . . . While the Court is faced with the inequity of allowing [Quaker Hills] to recover on a cont[r]act Davis not only agreed to, but asked for, the 62% sleight of hand by the parties here is not supported by the New York[] Standard Fire Policy, or otherwise by New York law. Given that this case implicates the highly regulated insurance industry, here the insurance company loses.

2011 WL 4343368, at *5; see id. at *6 ("As the apportionment of loss clause is inconsistent with the minimum coverage required by New York law, the apportionment of loss clause is deemed void, and the [Applicable] Policy will be enforceable as if it conformed to the statutory standards.").

Although Pacific contended that the apportionment-of-loss clause was not void because it was analogous to co-insurance clauses, which New York courts have upheld as valid, see Aldrich v. Great American Insurance Co., 195 A.D. 174, 186 N.Y.S. 569 (1st Dep't 1921), the district court rejected the analogy. The district court read the New York cases as finding co-insurance clauses viable only where the insured suffered a partial, rather than a total, loss:

-10-

A co-insurance clause divides the risk between the insurer and the insured in the event of a partial loss if the insured has failed to carry insurance up to a certain percentage of the value of the property, typically 80%. See N.Y. Life Ins. Co. v. Glen Falls Ins. Co., 184 Misc. 846, 55 N.Y.S.2d 176, 178-79 (N.Y.Sup.Ct.1945), aff'd, 274 A.D. 1045, 86 N.Y.S.2d 191 (N.Y.App. Div. 1st Dep't 1949), aff'd, 301 N.Y. 506, 93 N.E.2d 73 (1950) (explaining how co-insurance clauses operate and why insurers use them); see also Couch on Ins. 3rd Ed. ("Coinsurance: clause in property insurance requiring that the property be insured for a minimum percentage of its total value and making the insured a [']coinsurer['] to the extent that the coverage falls below the specified minimum."). The purpose of co-insurance, therefore, is to protect homeowners by encouraging them to value fairly their own property, and not undervalue it in order to receive a lower premium. Id. at 179, 93 N.E.2d 73; Aldrich, 186 N.Y.S. at 576.

2011 WL 4343368, at *5 (emphasis added). The court stated that

[a]lthough the apportionment of loss clause in the present case also divides the risk between the insurer and the insured, it is fundamentally different from a co-insurance clause. First, all of the cases containing a co-insurance clause involved a partial loss, not a total loss. Second, unlike a coinsurance clause, which is designed to encourage homeowners to value properly their property, the apportionment of loss clause here has no real purpose other than to make a $5,467,440 policy appear to be a $14,388,000 policy. Thus, the apportionment of loss clause is not analogous to a valid co-insurance clause.

Id. at *6 (emphasis added).

2. The District Court's Ruling as to Replacement Costs

The district court rejected Quaker Hills's claim for replacement costs, ruling that the Bank's commencement of the foreclosure constituted a "recall" of the mortgage within the meaning of the Policy, which, under the limitations stated in the "Extended Replacement Cost" provision, relieved Pacific of the obligation to pay such costs. The court noted that although Quaker Hills disputed that the mortgage had been "recalled," the Policy itself stated that it "use[s] words in their plain English meaning." Id. at *6 n.7 (internal quotation marks omitted).

The Court therefore understands "recall" to have its ordinary meaning of "Cancel, revoke." "Recall," The Free Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/recall (last visited July 22, 2011). Bank of America has undisputedly issued Plaintiff default notices demanding payment in full of all mortgage debts, thereby cancelling or revoking their loan to Plaintiff.

2011 WL 4343368, at *6 n.7.

### 3. The Judgment

A final judgment was entered, with no specification of the dollar amount that Quaker Hills is entitled to recover and without mention of replacement costs. The judgment stated as follows:

Defendant having moved for summary judgment on both of Plaintiff's claims, seeking dismissal of the complaint in its entirety, or in the alternative, dismissing the complaint to the extent recovery is sought by Plaintiff above Defendant's 38% apportioned share of the loss under the insurance policy; Plaintiff having cross-moved for summary judgment, and the matter having come before the Honorable Deborah A. Batts, United States District Judge, and the Court, on August 15, 2011, having rendered its Memorandum and Order granting Plaintiff's motion for summary judgment seeking a declaratory judgment on Defendant's liability to Plaintiff under the fire policy; granting Plaintiff's motion for summary judgment declaring the apportionment of loss clause void, and denying Defendant's motion for summary judgment in its entirety, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum and Order dated August 15, 2011, Plaintiff's motion for summary judgment seeking a declaratory judgment on Defendant's liability to Plaintiff under the fire policy is granted; Plaintiff's motion for summary judgment declaring the apportionment of loss clause void is also granted; and Defendant's motion for summary judgment is denied in its entirety, accordingly, the case is closed.

Judgment dated August 18, 2011 ("Judgment").

Quaker Hills wrote to the district court on September 1 and 12, 2011, indicating a need for a corrected judgment to state the precise amount Quaker Hills is entitled to collect from Pacific

on the Policy (after crediting Pacific with its payment on Quaker Hills's mortgage), and to award Quaker Hills prejudgment interest. On September 12, Pacific filed its notice of appeal from the judgment. On September 16, the district court ordered that the docket be reopened; and it stated that all proposed motions would be held in abeyance pending resolution of the appeal.

## II. DISCUSSION

Quaker Hills has cross-appealed from so much of the judgment as implicitly denies its claim for replacement costs. We affirm the district court's denial of the claim for replacement costs substantially for the reasons stated in the district court's Memorandum and Order, see Part I.B.2. above.

Pacific has appealed from so much of the judgment as declares that the Policy's apportionment-of-loss clause is void and that Pacific is not entitled to a reduction of its liability to 38 percent of the stated loss coverage amount in the Policy. It also challenges a ruling by the district court that rejected materials proffered by Pacific after the court's deadline for discovery had passed. As Pacific has not shown that the court's discovery ruling was an abuse of discretion, we decline to disturb it, and we decline to consider the materials belatedly submitted. We write to address the issue of the Policy's apportionment-of-loss clause, and to certify questions concerning that issue to the Court of Appeals for the State of New York.

A. The New York Standard Fire Insurance Policy

Certain aspects of New York's insurance laws are relatively clear. New York law specifies alternative minimum levels of coverage that must be provided in fire insurance policies for insured parties in the State. As indicated above, § 3404 of the New York Insurance Law provides, in subsection (e), a form "known and designated as the 'standard fire insurance policy of the state of New York.'" N.Y. Ins. Law § 3404(a). The form ("Standard Form" or "New York Standard Form") states that the insurer "does insure" the insured

**TO THE LESSER AMOUNT OF EITHER:**

1) THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME OF THE LOSS, OR

2) THE AMOUNT WHICH IT WOULD COST TO REPAIR OR REPLACE THE PROPERTY WITH MATERIAL OF LIKE KIND AND QUALITY WITHIN A REASONABLE TIME AFTER SUCH LOSS, WITHOUT ALLOWANCE FOR ANY INCREASED COST OF REPAIR OR RECONSTRUCTION BY REASON OF ANY ORDINANCE OR LAW REGULATING CONSTRUCTION OR REPAIR, AND WITHOUT COMPENSATION FOR LOSS RESULTING FROM INTERRUPTION OF BUSINESS OR MANUFACTURE, OR

3) TO AN AMOUNT NOT EXCEEDING _____ DOLLARS . . . .

Id. § 3404(e). Option "3)" allows the owner and the insurer to disregard the property's actual value and agree to have the policy specify instead the amount the insurer will pay the insured in the event that the property is totally destroyed. "Where the parties have agreed upon the value of the insured property in the event of future loss, the policy is said to be a valued policy," Nichols v. Hartford Fire Insurance Co., 61 A.D.2d 555, 557, 403 N.Y.S.2d 335, 336 (3d Dep't 1978) ("Nichols"); and "if it be decided that the loss was total, then under the valued policy the plaintiff would be entitled to receive

-14-

the amount of the policy," <u>Lee v. Hamilton Fire Insurance Co.</u>, 251 N.Y. 230, 235, 167 N.E. 426, 426 (1929). Specification of such an amount generally, absent fraud or mistake, relieves the parties, where the loss is total, of the need to determine either the property's actual cash value at the time of loss or the cost of replacing the property. <u>See</u>, <u>e.g.</u>, <u>Nichols</u>, 61 A.D.2d at 557, 403 N.Y.S.2d at 336-37.

> With exceptions that are not pertinent here, the statute provides that
>
> > <u>[n]o policy or contract of fire insurance shall be made</u>, issued or delivered by any insurer or by any agent or representative thereof, on any property in this state, <u>unless it shall conform as to all provisions, stipulations, agreements and conditions with such form of policy</u> . . . .

N.Y. Ins. Law § 3404(b)(1) (emphases added). Thus, while an insurer is free to deviate from the New York Standard Form by providing terms that are more favorable, <u>see</u>, <u>e.g.</u>, <u>1303 Webster Ave. Realty Corp. v. Great American Surplus Lines Insurance Co.</u>, 63 N.Y.2d 227, 231, 481 N.Y.S.2d 322, 323 (1984) ("<u>Webster</u>") (although the Standard Form allows the insurer to require that an action on the policy be brought within a two-year period, the insurer may permissibly omit reference to any limitations period and thereby allow such an action to be brought within the general statutory six-year limitations period for an action on a contract), a fire insurance policy must include "terms and provisions <u>no less</u> favorable to the insured than those contained in the standard fire policy," N.Y. Ins. Law § 3404(f)(1)(A) (emphasis added). Accordingly, "[t]he standard policy is the minimum level of coverage permissible for an insurance company to issue." <u>Lane v. Security Mutual Insurance Co.</u>, 96 N.Y.2d 1, 5, 724 N.Y.S.2d 670, 671 (2001) ("<u>Lane</u>"); <u>see also</u> <u>Woodhams v. Allstate Fire & Casualty Co.</u>, 748 F.Supp.2d 211, 217 (S.D.N.Y. 2010) ("The standard policy . . . clearly sets a minimum floor of the lesser of the [Standard Form's] three options.").

Where a policy contains one or more terms that are less favorable than those in the Standard Form, New York courts have held that the policy "is enforceable as if it conformed to the statutory standard," i.e., it is enforced as if the violative provision were not included. Webster, 63 N.Y.2d at 231, 481 N.Y.S.2d at 323; see, e.g., Tag 380, LLC v. ComMet 380, Inc., 10 N.Y.3d 507, 514, 860 N.Y.S.2d 433, 437 (2008) ("Tag"). In Webster, the issue was the timeliness of an action brought to recover on a policy that provided a one-year limitations period despite the Standard Form's provision of a two-year period. Although the court concluded that the action was untimely, it ruled that the action was properly dismissed on the basis of the statute, not on the basis of the policy as written. See id. at 231, 481 N.Y.S.2d at 323. In Lane, the controversy involved the scope of a policy provision for an exclusion from coverage; the New York Court of Appeals ruled that the exclusion was unenforceable as written because the policy's exclusionary term--"an insured"--was broader than the term "the insured" in the Standard Form:

> [T]he "an insured" language contained in defendant's policy offers an innocent party significantly less coverage than the language "the insured". Since the latter phrase is that adopted by the Legislature in the Insurance Law, use of the former violates that statute's requirement that all fire policies offer the level of coverage provided in the standard policy.

96 N.Y.2d at 5, 724 N.Y.S.2d at 672 (other internal quotation marks omitted). See also Tag, 10 N.Y.3d at 514-15, 860 N.Y.S.2d at 437-38 (holding that a policy provision expressly precluding liability for damages caused by "terrorism" was inconsistent with the Standard Policy, which does not provide for such an exclusion).

-16-

B.  New York Cases Dealing with Co-Insurance Clauses

In Aldrich v. Great American Insurance Co., 195 A.D. 174, 186 N.Y.S. 569 (1st Dep't 1921) ("Aldrich"), the Appellate Division confronted a challenge to an "eighty per cent average or coinsurance clause," id. at 174, 186 N.Y.S. at 569-70, providing for the division of risk between the insurer and the insured where the insured had procured coverage for less than the full value of the property.

> In other words, if the insurance represents eighty per cent or more of the value at the time of the loss of all the property insured, full recovery of the loss may be had; but if the insurance is for less than eighty per cent of such value, then the recovery is limited to the proportion of the loss which the amount of the insurance bears to eighty per cent of the value at the time of the loss of all the property insured.

Id. at 176; 186 N.Y.S. at 570-71.  The Aldrich court found such clauses to be consistent with New York's laws and public policy, noting that "they merely require the [insured], as a condition of receiving a lower premium rate, to stand part of the loss himself, where he does not take out full insurance or insurance to the percentage of the value specified." Id. at 183, 186 N.Y.S. at 576.  Such clauses allow "insurance companies to charge depend[ing] upon the premiums received and losses sustained by them." Id., 186 N.Y.S. at 575.  In finding that the clause was consistent with the New York standard fire policy that was in force at that time, the Aldrich court noted that "if the Legislature intended to . . . prohibit such agreements for average or coinsurance, there would have been embodied in the statute or in the standard policy some provision clearly expressing or manifesting such intent." Id. at 185, 186 N.Y.S. at 577.

Subsequently in New York Life Ins. Co. v. Glens Falls Ins. Co., 184 Misc. 846, 848-50, 55 N.Y.S.2d 176, 178-79 (Sup. Ct. N.Y. Co. 1945) ("Glens Falls"), aff'd, 274 A.D. 1045, 86

N.Y.S.2d 191 (1st Dep't 1949), aff'd, 301 N.Y. 506, 93 N.E.2d 73 (1950), the New York courts reaffirmed the enforceability of an 80-percent co-insurance clause, at least when there has been a partial, rather than a total, loss. The clause at issue there provided:

> This company shall not be liable for a greater proportion of any loss or damage to the property described herein than the sum hereby insured bears to eighty per cent (80%) of the actual cash value of said property at the time such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon.

> In the event that the aggregate claim for any loss is both less than ten thousand dollars ($10,000) and less than five per cent (5%) of the total amount of insurance upon the property described herein at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required.

184 Misc. at 847-48, 55 N.Y.S.2d at 177. Noting that co-insurance clauses such as these are frequently added as riders to the standard policy because fires usually result in a partial loss rather than a total loss, the trial court explained:

> Only a small number of fires result in the total destruction of the property insured. Many property owners, realizing that the possibility of total destruction is so slight, insure merely for a small percentage of the value of the building or goods. If, for example, they can, by insuring the property for only 25% of its value, receive full indemnity for any ordinary loss, they are tempted to accept this partial coverage at a cost of only one-fourth of that required for complete coverage.

> To prevent the property owners from taking out such a small amount of insurance, and thereby decreasing the premium payments, the insurers commonly insert, as a rider to the standard policy, the co-insurance clause. This results in reducing the recovery in case of a partial loss, though in case of total loss, the insurer is liable for the amount named in the policy. For example, let us assume that the property is worth $100,000, the loss is $10,000, and the insured carries a $20,000 policy. If the policy contained no co-insurance clause, the insurer would recover $10,000, but if the policy contained the usual 80% co-insurance clause, his recovery would be only $2,500, since he carried only one-fourth of the $80,000 insurance required.

-18-

184 Misc. at 849, 55 N.Y.S.2d at 178 (emphasis added).  The <u>Glens Falls</u> court noted that

> [c]o-insurance has the effect of preventing one who is insured for a small part of actual value, and who has paid a correspondingly small premium, from collecting as much, in the event of loss, as one who is insured for a large percentage of value and who has paid a correspondingly large premium,

184 Misc. at 848, 55 N.Y.S.2d at 178, and that "[t]he validity of the co-insurance clause has been sustained; its purpose has been held to be sound," <u>id</u>. at 849, 55 N.Y.S.2d at 179:

> "It is manifest that the rates of insurance, which it becomes necessary for insurance companies to charge, depend upon the premiums received and losses sustained by them. . . .  It is important, both to preserve the solvency of insurance companies and for the equitable application of the rates charged for insurance, that such rates shall be determined upon scientifically. Coinsurance clauses have frequently been declared to be just and reasonable and entirely consistent with the rule of indemnity, for they merely require the assured, as a condition of receiving a lower premium rate, to stand part of a loss himself, where he does not take out full insurance or insurance to the percentage of the value specified. . . .
>
> " . . . . The very purpose of the coinsurance clause is to place upon the insured the responsibility for ascertaining the value of his  property, and for keeping it properly insured; and it goes without saying that having assumed this responsibility, he must live up to it or he will be caught at a disadvantage."

<u>Id</u>. at 849-50, 55 N.Y.S.2d at 179 (quoting <u>Aldrich</u>, 195 App. Div. at 183-84, 186 N.Y.S. at 575-76 (other internal quotation marks omitted)); <u>see</u>, <u>e.g.</u>, <u>Merritt v. Jefferson Insurance Co.</u>, 112 Misc.2d 51, 52, 445 N.Y.S.2d 972, 973 (Sup. Ct. Erie Co. 1982) ("The intent of coinsurance clauses is clearly to reward those who insure at close to full value and to penalize those who insure at less than full value").

In <u>Magie v. Preferred Mutual Insurance Co.</u>, 91 A.D.3d 1232, 1233, 937 N.Y.S.2d 452, 453-54 (3d Dep't 2012), the insurer sought to invoke a co-insurance clause in order to be held liable for only part of the stated coverage amount for a home that was totally destroyed by fire.  The

Appellate Division found the co-insurance clause inoperative on the ground that "in New York, a coinsurance clause 'results in reducing the recovery in case of a partial loss, though <u>in case of total loss, the insurer is liable for the amount named in the policy</u>.'" <u>Id</u>. at 1235; 937 N.Y.S.2d at 455 (quoting <u>Glens Falls</u>, 184 Misc. at 849, 55 N.Y.S.2d at 178). In support of that proposition, the Appellate Division also cited, <u>inter alia</u>, the district court opinion in the present case.

C. <u>Certification of Questions to the New York Court of Appeals</u>

The Policy at issue in the present case stated that the loss coverage amount on the home was $14,388,000. (<u>See</u> March 24, 2009 Policy Coverage Update stating "$14,388,000 DWELLING COVERAGE AMOUNT".) The home was totally destroyed by fire in 2009, and the cost of replacing the home would have exceeded that amount. The apportionment-of-loss clause in the Policy was a reiteration of clauses that appeared in predecessor policies; it had been introduced in 2006 in the Second Policy, after Davis, Quaker Hills's principal, next to a "question, reading 'desired amount of replacement coverage you want for the dwelling? (appraised @ $13,000,000 at August [2006] appraisal),'" had written "'5,000,000,'" 2011 WL 4343368, at *1. Despite what Davis wrote, the Second Policy stated the value of the home as $13,002,000; and the Applicable Policy stated the value of the home as $14,388,000. Thus, the apportionment-of-loss clause invoked by Pacific in order to pay Quaker Hills no more than 38 percent of the home's value as stated in the Policy may, as the district court concluded, violate the provisions in § 3404 of the New York Insurance Law setting out alternative minima of (1) actual cash value, (2) replacement cost, or (3) specified value.

On the other hand, New York public policy appears to favor co-insurance clauses because they are designed to prevent property owners from recovering full value for losses on property that they have chosen to undervalue for insurance purposes in order to be charged lower premiums. After Davis's "5,000,000" notation on the coverage inquiry, and the introduction of the apportionment-of-loss clause, Quaker Hills was charged a lower premium on the Policy, roughly commensurate with an apportionment of only 38 percent of the risk to the insurer. Pacific argues that the apportionment-of-loss clause should be upheld on the basis that it is thus analogous to a co-insurance clause. The analogy appears to fall short in light of the judicial rulings that co-insurance clauses in New York are not applicable when, as here, the property was totally, rather than partially, destroyed. We note, however, that there appears to be no New York Court of Appeals opinion addressing that issue. The trial court's decision in Glens Falls--which stated obiter that a co-insurance clause would have no applicability in the event of a total loss--was affirmed by the Appellate Division, whose decision was in turn affirmed by the Court of Appeals; but each affirmance was rendered without a majority opinion.

We have found no New York cases, nor any federal court cases construing New York law, dealing with apportionment-of-loss clauses such as the one at issue here.

This Court's Local Rule 27.2 allows for certification of a question of state law where "the New York Court of Appeals has not squarely addressed [the] issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it." Joseph v. Athanasopoulos, 648 F.3d 58, 67 (2d Cir. 2011) (internal quotation marks and citations omitted). Certification is appropriate in circumstances where "the question . . . [is] of importance to the state,

-21-

and its resolution . . . require[s] value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make." Id. The Local Rules of the New York Court of Appeals permit certification of questions by this Court when we encounter "determinative questions of New York law . . . for which no controlling precedent of the Court of Appeals exists." N.Y. Court of Appeals Local Rule 500.27(a).

In light of (a) the lack of controlling precedent in the New York Court of Appeals or clear guidance from lower New York courts, (b) the fact that the viability of apportionment-of-loss clauses such as that at issue here will be determinative of the merits of Pacific's appeal, and (c) the important State interests and policy considerations that must be balanced in determining the permissible allocation of risk in State fire insurance contracts, we conclude that the New York Court of Appeals is better situated than is this Court to determine whether the apportionment-of-loss clause at issue here is consistent with the State's Standard Fire Policy. Accordingly, we certify the following questions of New York law:

(1) In an insurance policy that provides a stated dollar amount of loss coverage in the event of a fire, does a policy clause that, in exchange for a reduction in the premium charged, limits the insurer's liability to a percentage of any loss violate New York Insurance Law?

(a) If such a clause violates New York Insurance Law, is the clause void, or is it voidable or subject to principles of waiver or estoppel?

(2) If such a clause is in general permissible under New York Insurance Law, is it enforceable where there has been a total loss of the subject property?

(3) If such a clause is in general permissible under New York Insurance Law, is there a limit on the percentage of liability that can be apportioned to the insured?

-22-

In formulating the certified questions, we do not intend to limit the scope of the analysis by the Court of Appeals. We invite the Court of Appeals to alter or elaborate on these questions as it deems appropriate.

CONCLUSION

We have considered all of Quaker Hills's contentions in support of its cross-appeal and have found them to be without merit; the judgment of the district court is affirmed to the extent that it dismissed Quaker Hills's claim for extended replacement costs. As to Pacific's appeal from so much of the judgment as ruled that Pacific is liable to Quaker Hills for the full amount of loss coverage shown in the Applicable Policy, we hereby instruct the Clerk of Court for the Second Circuit to transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a complete set of all filings in this Court by the parties. This panel will retain jurisdiction of Pacific's appeal for resolution after disposition of the certified questions by the New York Court of Appeals.